UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| A.C., J.H., and H.M. on behalf of themselves and others similarly situated; Disability Rights South Carolina, | ) ) ) ) | Civil Action No. 8:22-cv-01358-MGL-JDA |
| | ) ) | **AMENDED COMPLAINT** |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| Richland County, | ) ) | |
| Defendant. | ) | |

Plaintiffs by and through their undersigned counsel, file this Complaint against Defendant Richland County, and allege as follows:

## I.      NATURE OF THE ACTION

1.      This is a civil rights action brought by Plaintiffs to address the dangerous, inhumane, and unconstitutional conditions, policies, and practices that exist and have existed as a result of Defendant's failure to provide adequate mental health care and safe and sanitary conditions of confinement to detainees suffering from serious mental illness confined at Alvin S. Glenn Detention Center ("ASGDC").  This class action seeks declaratory and injunctive relief on behalf of such detainees, most of whom are being held prior to being convicted of any crime. Many are locked in cold, moldy, filthy, infested, unsafe, and unsanitary cells for up to 23 to 24 hours a day in the Special Housing Unit ("SHU") largely as a result of their symptomatology where they are denied adequate mental health care and are confined for extended periods of time.

2.      When they are not confined in the SHU, detainees with serious mental health illness are at substantial risk of being subjected to violence at the hands of other

1

detainees as a result of Defendant's operation of ASGDC at dangerously low staffing levels.

3.     On many occasions, such detainees are also subjected to cruel methods of punishment by Defendant's pattern and practice locking them for prolonged periods in shower stalls so small they cannot sit down. Disabled Detainees are also frequently shackled to a "restraint chair" for prolonged periods without regard to their ongoing behavior and often with little or no monitoring or breaks. In some cases, Disabled Detainees are left in the restraint chairs for so long without a break they are forced to urinate on themselves.

4.     When detainees with serious mental health are placed on "suicide watch," they are often placed naked into non-therapeutic, filthy cells where they are behind metal doors with small windows and often cannot be seen by security staff.

5.     Forcing anyone, especially people with mental and emotional disabilities, to be subjected to such medieval conditions is unconscionable, inexcusable, and unconstitutional. These practices exacerbate their already fragile, vulnerable conditions. They must stop.

6.     The systematic and significant operational deficiencies at the ASGDC violate the Fourth Amendment's mandate that individuals in pretrial custody be protected from harm and not subjected to punishment, as well as the prohibition of the Eighth Amendment that when punishment is administered, it must not be cruel and unusual.

7.     Plaintiffs bring this action to redress violations by the Defendant, acting under color of state law, of the civil and constitutional rights of the Disabled Detainees.

8.      Defendant is deliberately indifferent to the substantial risks of serious harm faced by detainees with serious mental illness. The conditions at ASGDC, and the policies and practices of Defendant, endanger their physical health and safety, threaten their emotional and psychological well-being, and deprive them of rights and privileges because of their disabilities.

9.      Concerns expressed by detainees and those acting on their behalf, in addition to those conveyed by Defendant's own agents, administrators, and staff, about the unlawful treatment of mentally ill detainees have been unheeded for years. The conditions to which they are subjected have only grown worse over time.

10.     As detailed below, the combination of numerous, specific, and repeated violations of the Fourth, Eighth, and Fourteenth Amendments, taken together with multiple deficient policies and practices that cause or contribute to those violations, is sufficient to establish a pattern and practice of constitutional violations.

11.     Plaintiffs, seek declaratory and injunctive relief against Defendant on the grounds that Defendant has deprived detainees with serious mental illness of the rights secured to them by the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution, as enforced by 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, *et seq*., and relevant provisions of federal law.

## II.    JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1343(a)(3), this being an action to redress the deprivation of rights under color of state law secured by the Constitution.

13.     This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1343(a)(4), this being an action to secure declaratory and injunctive relief under the Acts of Congress providing for the protection of civil rights, specifically the Civil Rights Act.

14.     This Court also has jurisdiction over this action under 28 U.S.C. § 1331, this being an action in which the matter in controversy arises under the Constitution and the laws of the United States.

15.     This Court is authorized to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202 and Rules 57 and 65 of the Federal Rules of Civil Procedure.

16.     This District is an appropriate venue for this action pursuant to 28 U.S.C. § 1391(b) as the acts and events giving rise to the claims herein occurred within the Columbia Division of South Carolina.

### III.     PARTIES

17.     The plaintiff representatives of the putative class are detainees who suffer from serious mental illness and who were confined at the filing of this action at ASGDC. Due to the highly private and personal nature of the facts surrounding their claims and to protect their privacy and dignity, these individuals will be identified in this Amended Complaint only by initials.  The identities of the representatives of the putative class will be provided to Defendant and the Court in an unredacted copy of Exhibit A, attached hereto, which will be filed simultaneously with this Amended Complaint and a Motion to File Under Seal pursuant to Local Rule 7.02.

18.     A.C. has a long history of serious mental illness, including persistent suicidality.  He has been taken to local hospitals from ASGDC over 10 times for treatment for injuries caused by his mental illness since he has been detained, including injuries

from multiple suicide attempts.  A.C. is frequently confined to the restraint chair for extended periods, not allowed to stretch his limbs or use the restroom.  A.C. has been forced to urinate on himself while confined to the restraint chair.  ASGDC employees do not monitor A.C. while he is in the restraint chair and on more than one occasion, A.C. has been able to access the the means to harm himself while in the chair.  On one occasion, A.C. was able to grab a bottle of bleach and drink it while "restrained" in the restraint chair.  After being transported to the hospital for treatment, A.C. returned to ASGDC where he was placed back in the restraint chair as punishment for drinking bleach while still wearing a uniform stained with and still containing bleach vomit.  A.C. has attempted to light himself on fire and has been denied proper wound care for the significant burns he suffered to his leg.  A.C.  has been able to access wires and shards of glass with which to mutilate himself, again all while he is ostensibly on "suicide watch."  A.C. even communicated to ASGDC guards the methods with which he could harm himself in a particular cell and asked for assistance in protecting himself and was placed into the cell notwithstanding his warning.  A.C. then harmed himself in the precise manner he predicted would occur.  A.C. has not received adequate mental health care or appropriate levels of supervision during the periods of time he was on suicide watch or otherwise at ASGDC.  He is at substantial risk of serious harm, including death, of which Defendant is aware and has been deliberately indifferent.

19.    J.H. has a long history of serious mental illness, including diagnoses of schizophrenia, depression, and anxiety.  J.H. has been detained in the SHU where he was confined because of his mental health to a cell for 23-24 hours a day for a period of greater than five months.  At the onset of such confinement, J.H. was restrained in a

restraint chair wearing only a uniform top for approximately two days. J.H. was then placed in a shower stall for several hours before eventually being placed in a cell. While on suicide watch in the SHU, J.H. was provided no soap or toilet paper. As a result, J.H.'s cell was filthy and smelled of feces. During the period of time when J.H. was not in the SHU, he was not properly supervised and was attacked by a non-disabled detainee, causing J.H. to sustain head injuries for which he was transported to a local hospital and treated. J.H. has not received adequate mental health care to treat his condition during his detention at ASGDC and has not been properly supervised. He is at substantial risk of serious harm of which Defendant is aware and has been deliberately indifferent.

20.     While at ASGDC, H.M. has been confined repeatedly in the SHU as a result of his mental illness. When H.M. was first placed in the SHU, he was held in a shower stall for two days, unable to sit or lie down, unable to bathe, forced to relieve himself standing up or squatting over a drain. Eventually, H.M. was placed in a suicide watch cell. For H.M., suicide watch meant being locked in a cell for 24 hours a days for at least two consecutive weeks. During suicide watch, H.M. was not allowed to leave his cell for psychotherapy, counseling, recreation, bathing, nor did he receive adequate mental health services while in his cell. H.M. was not allowed to have any toilet paper or anything else in his suicide watch cell, except for a sliver of soap the slize of his thumbnail. H.M.'s cell was intermittently flooded contaminated water. Defendant has failed to provide adequate mental health care to H.M. H.M. is at substantial risk of serious harm of which Defendant is aware and has been deliberately indifferent.

21.     DRSC is a private, not-for-profit South Carolina corporation established as a protection and advocacy organization for the State of South Carolina and charged by

state and federal law to protect and advocate for the rights of people with disabilities in South Carolina. On behalf of detainees with serious mental illness confined at ASGDC, DRSC asserts organizational, associational, and statutory standing as a party to this action.

22.     Richland County is responsible for the ownership, management, operation, staffing, and oversight of ASGDC and has, at all times relevant to this action, excised such responsibility through the color of law by and through the policies, practices, acts, and omissions of its officers, agents, and servants, including without limitation the following: elected members of Richland County Council; duly designated administrators of Richland County; personnel with administrative, supervisory, and front-line responsibilities at ASGDC; and third-party contractual providers of medical, mental health, and other services at ASGDC.

## IV.     CLASS ACTION ALLEGATIONS

23.     The plaintiff representatives of the putative class bring this action on behalf of themselves and all others who are similarly situated ("Disabled Detainees"), pursuant to Rule 23 of the Federal Rules of Civil Procedure.

24.     The class is so numerous that joinder of all members is impracticable. The class consists of all individuals at any time since April 28, 2022, have been or will be confined at ASGDC and who, at any time since such date, have been or will be:

1)  Assigned to "mental health" housing at ASGDC.

2)  Diagnosed by a psychiatrist or other licensed clinical mental health professional with any of the following mental illnesses:

    a.  Cognitive disorders (e.g., traumatic brain injuries, Cognitive Disorder Not Otherwise Specified);

b.  Schizophrenia (all subtypes);

c.  Schizoaffective Disorder (all subtypes);

d.  Paranoid Disorder (e.g., Delusional Disorders);

e.  Major Depressive Disorder (all subtypes);

f.  Bipolar Disorder (all subtypes);

g.  Other Psychotic or Mood Disorders (e.g., Schizoprehiform, Dysphymia, Psychotic Disorder Not Otherwise Specified); or

3) Diagnosed by a psychiatrist or other licensed clinical mental health professional with another mental disorder, not listed above, that has resulted in significant functional impairment, defined as:

a.  the inability to attend to and effectively perform the usual or necessary activities of daily living;

b.  an extreme impairment of coping skills, rendering the patient exceptionally vulnerable to unintentional or intentional victimization and possible mismanagement; or

c.  behaviors that are bizarre and/or dangerous to self or others.

25.   Questions of law and fact exist that are common to the class.  These questions include the nature and constitutionality of the conditions, practices, customs, and policies affecting detainees meeting the foregoing definition.

26.   The conditions, practices, customs, and policies challenged in this action apply in substantially the same manner to the representative plaintiffs and all members of the class so that the claims of the representative plaintiffs are typical of those of the class.

27.   The representative plaintiffs will fairly and adequately represent the interests of the class.  They possess a personal interest in the subject matter of this suit.

They are represented by counsel who are experienced in class action and prisoner rights litigation.

28.    Defendants have acted and refused to act on grounds generally applicable to the class, thereby making appropriate final declaratory and injunctive relief with respect to the class as a whole.

## V.    FACTUAL ALLEGATIONS

29.    ASGDC is located in a complex situated 8.1 miles from the South Carolina Statehouse and, according to reports at or near the time of the filing of this action, houses 650-700 individuals.

## A.    Disabled Detainees

30.    A substantial number of Disabled Detainees are confined at ASGDC.

31.    Disabled Detainees have serious mental health needs that require proper diagnosis and treatment.  They are at substantial risk of harm if their mental health needs are not addressed adequately.

32.    As a result of Defendant's failure to provide adequate mental health care, Disabled Detainees are at substantial risk of serious harm of which Defendant is aware and has been deliberately indifferent.

## B.    Defendant Fails to Provide an Adequate Mental Health Program for Disabled Detainees

33.     Components of a constitutionally adequate correctional mental health program include the following: (1) a systematic program for screening and evaluating detainees to identify those who require mental health treatment; (2) individualized treatment plans that provide for treatment that is more than placement in restrictive housing and that includes close supervision of detainee patients; (3) prescription and

administration of psychotropic medications with appropriate supervision coupled with adequate psychotherapy; and, (4) a basic program for identification, treatment, and supervision of detainees with suicidal tendencies.

1. **ASGDC Does Not Have an Effective Systematic Program for Screening and Evaluating Detainees to Identify Those Who Require Mental Health Treatment**

34.    Failure to identify and respond appropriately to serious mental illness can lead to significant medical deterioration and, in some cases, death.

35.    Accepted standards of correctional intake screenings are used to identify detainees with histories of mental health treatment, major mental illnesses, the need for psychotropic medications, and suicide potential.

36.    Without the application of thorough and effective screening systems, Disabled Detainees may suffer a loss of the continuity of care that may lead to depression, decompensation, psychosis, and other acute problems.

37.    Defendant's mental health screening and evaluation program is inadequate in that, among other things, it relies heavily on detainee self-reporting and does not have a policy or custom of consistently obtaining and incorporating diagnostic and treatment histories from community and state mental health providers that previously treated Disabled Detainees into individual treatment plans for Disabled Detainees.

38.    These deficiencies in the ASGDC mental health screening and evaluation system expose Disabled Detainees to a substantial risk of serious harm to which Defendant has been deliberately indifferent.

2. **Defendant Fails to Provide An Adequate Mental Health Treatment Program and Fails to Closely Supervise Disabled Detainees**

39.     The mental health treatment program at ASGDC consists of little more than placement of Disabled Detainees in restrictive housing and *pro forma* attempts to supervise Disabled Detainees.

40.     Neither by and through contractual service providers or otherwise does Defendant engage in individual psychotherapeutic treatment planning for Disabled Detainees or provide confidential counseling and therapeutic services to Disabled Detainees.

41.     Defendant also fails to adequately supervise Disabled Detainees in any setting, whether they are in restrictive housing in the SHU or housed in other units of ASGDC.

42.     Defendant confines Disabled Detainees for prolonged periods without due process of law in restrictive housing in the SHU for 23-24 hours a day because of their mental health conditions.

43.     Because of Defendant's failure to provide adequate mental health services to Disabled Detainees, Defendant confines Disabled Detainees in the SHU for prolonged periods for alleged disciplinary violations, upon information and belief, at rates materially disproportionate to, and for periods of time materially greater, than sanctions imposed on non-disabled detainees.

44.     Because of Defendant's failure to provide adequate mental health care, Defendant confines Disabled Detainees in the SHU for prolonged periods without providing sufficient out-of-cell time for them to receive structured therapeutic and counseling services, recreation, showers, and other necessary activities.

45.     Defendant's confinement of Disabled Detainees in the SHU for 23-24 hours a day for prolonged periods coupled with its failure both to provide adequate mental health treatment and to closely supervise Disabled Detainees exposes them to a substantial risk of serious harm of which Defendant is aware and deliberately indifferent.

**3. <u>Defendant Fails to Administer Psychotropic Medications with Appropriate Supervision and Psychotherapy</u>**

46.      Defendant does administer prescribed psychotropic medications in some circumstances to Disabled Detainees but fails to supervise appropriately the administration of such medications or provide related psychotherapy pursuant to an adequate treatment plan.

47.     The needs of Disabled Detainees for individual and group psychotherapy to complement their medication regimen are not addressed by Defendant in any manner.

48.     As a result of Defendant's deliberate indifference to Disabled Detainee's needs for closely supervised medication administration coupled with psychotherapy, Disabled Detainee are at substantial risk of serious harm.

**4. <u>Defendant Has Failed to Develop and Maintain a Program to Identify, Treat, and Supervise Detainees with Suicidal Tendencies</u>**

49.     Defendant's suicide prevention program is woefully inadequate and dangerously deficient.

50.     Suicide watch at ASGDC does not occur in a therapeutic environment, but instead functions as a punitive measure that consists of placement in a filthy, stripped-out cell in the SHU or, on some occasions, in small, rank shower stalls or dilapidated restraint chairs.

51.     Suicide watch cells are frequently not cleaned between occupants. New occupants, most of whom are Disabled Detainees, often find fecal matter, urine, blood, and other bodily fluids on the walls and floors of the cells into which they are transferred. After being transferred to such cells, a suicidal Disabled Detainee, may be confined for days or weeks. Defendant does not clean or sanitize the cell while it is occupied, creating a substantial risk to Disabled Detainees of contracting a communicable disease.

52.     Overflowing toilets are common in SHU and, from time to time, can cause raw sewage to flow into a suicide watch cell. Suicidal Disabled Detainees have been forced to remain in such contaminated cells for days at a time with no ability to stand on the floor without coming in direct contact with the raw sewage.

53.     Suicidal Disabled Detainees are frequently given no toilet paper or soap and are unable to clean themselves. If they are allowed any clothing at all, they are not provided clean clothing and are forced to remain in their soiled garments for weeks.

54.     Suicidal Disabled Detainees are on occasion strapped into restraint chairs and placed inside suicide watch cells and are not supervised in the cells.

55.     While on suicidal watch, Disabled Detainees are provided no confidential therapeutic counseling or psychotherapy.

56.     Supervision of Disabled Detainees on suicide watch is scarce, unreliable, and inadequate.  It falls far short of being continuous. In some cases, suicidal Disabled Detainees are held in cells out of view of ASGDC staff, or where they are only visible through a small window, and where security officers cannot perform the continuous supervision required for the safety of Disabled Detainees on suicide watch.

57.    Defendant's failure to develop and maintain a program to identify, treat, and supervise Disabled Detainees with suicidal tendencies exposes them to substantial risk of serious harm, even death. Defendant is aware and deliberately indifferent to such risk.

**C.    Defendant's Use of Shower Stalls and Restraint Chairs to Confine Detainees for Extended Periods Serve No Legitimate Governmental Purpose and Punish Them for Manifesting the Symptoms of Their Illness**

58.    Disabled Detainees are routinely and indiscriminately confined and held by Defendant for extended periods in shower stalls and restraint chairs for manifesting symptoms of their mental illness.

59.    Because of the Defendant's failure to provide adequate mental health care, Defendant confines Disabled Detainees, upon information and belief, in shower stalls and restraint chairs at rates materially greater and for periods of time materially longer than Defendant confines non-disabled detainees in such manner.

60.    The shower stalls in which Defendant routinely confines Disabled Detainees behind a barred metal door measure two by three feet. They contain no chair or padding. The detainees cannot sit. If they are unable to stand, they must lean or squat.

61.    The shower stalls have no toilet or sink. To relieve themselves, Disabled Detainees urinate in the drain at their feet. If they defecate at all, they often do so in a Styrofoam tray in which their food is served.

62.    During these periods of confinement, which are determined randomly by officers, Disabled Detainees are not permitted to leave the shower stall. There they remain for hours, in some cases, up to 48 hours.

63.    Defendant also routinely confines Disabled Detainees in restraint chairs that look like an electric chair with straps used to immobilize Disabled Detainees by

strapping down their feet, legs, torso, arms, neck, and head. These restraint chairs are in poor condition, and frequently instead of using the strap restraints, Disabled Detainees are handcuffed or zip-tied to the chairs.

64.     Defendant places Disabled Detainees in shower stalls and restraint chairs without consultation with licensed mental health professionals prior to, during, or immediately following such isolation or restraint to assess the detainee's psychological condition or to determine whether such measures are necessary and appropriate to affect the detainee's behavior.

65.     During their confinement in restraint chairs, Disabled Detainees are held long beyond the point they are needed, that is in when a detainee's allegedly dangerous conduct that formed the ostensible justification for the confinement has been extinguished.

66.     Placement in shower stalls and restraint chairs occurs often in response to a Disabled Detainee's conduct related to manifestations of their underlying mental illness, including the following: suicide attempts, self-harm and, disordered behavior usually from a single cell in which the detainee is already confined, e.g., cursing, spitting, exposing themselves, talking back, yelling, smearing feces, throwing bodily fluids, etc.

67.     Defendant often places Disabled Detainees in shower stalls and restraint chairs without charging them with an offense or violation of an ASGDC disciplinary rule and without due process of law.

68.     In 2014, Richland County Council commissioned Pulitzer/Bogard & Associates, LLC to conduct a management and operations study ("Management and Operations Study"). In a report dated April 18, 2014, the Management and Operations

Study identified the existence of a "cool down sanction" in use at ASGDC, finding it was common practice to place detainees in SHU in an individual cell or shower stall for up to 12 continuous hours as "an ambiguous punitive measure that is frequently used and has a host of negative consequences for the affected inmate." The Management and Operations Study observed that the principles of direct supervision, under which ASGDC then reportedly operated, did not support the use of the cool-down sanction. The Management and Operations Study recommended that "ASGDC should conduct an independent review of the legality, liabilities, and appropriateness of the cool down sanction in the Detention Center's SHU as it is currently administered." Study at pp. 14-15.

69.     Based on the 2014 report as well as the custom and practice of using shower stalls and restraint chairs for unreasonable and prolonged periods of time, Defendant is aware of and deliberately indifferent to the substantial risk of serious harm to which Disabled Detainees are exposed by being confined in shower stalls and restraint chairs.

**D.     Defendant's Use of Prolonged Solitary Confinement Coupled with Inadequate Mental Health Services Constitutes Cruel Unusual Punishment and Discriminates Against Disabled Detainees Because of their Disabilities**

70.     Defendant's isolation of Disabled Detainees in cells for 22 to 24 hours per day for consecutive weeks and months without being released for structured therapeutic activities, supervised programs, or recreation violate detainees' rights to be free from cruel and unusual punishment.

71.     The harms associated with use of improper and excessive restrictive housing have been increasingly recognized throughout the nation.

72.     Systemic deficiencies in Defendant's mental health program contribute to its overreliance on and inappropriate use of restrictive housing as a means of controlling detainees with serious mental illness. Those deficiencies include inadequacies Defendant's mental health program, marginalized role of its mental health staff, severe deficiencies in security operations, inadequate training of security staff in the management of detainees with serious mental illness, and the absence of supervisory oversight mechanisms to monitor and assess the effect on Disabled Detainees of prolonged confinement in restrictive housing.

73.     The 2014 Management and Operations Study commissioned by the Defendant expressed concerns about housing detainees with serious mental illness in SHU, particularly detainees on suicide watch and those awaiting mental health competency evaluations.

74.     The Management and Operations Study also found that restrictive conditions of confinement in SHU deprive detainees of constructive, meaningful, and sufficient opportunities to engage in ASGDC programs, services, rights, and privileges for which the detainees otherwise would be eligible.

75.     Defendant's continued reliance on restrictive housing to confine Disabled Detainees under the current conditions at ASGDC, including the failure to provide an adequate program of mental health treatment, subjects to them the substantial risk of serious harm and demonstrates Defendant's deliberate indifference to such risk.

**E.      Defendant Is Operating ASGDC at Dangerously Low Staffing Levels that Violate Disabled Detainees Constitutional Rights to Be Protected from Harm**

76.     ASGDC is dangerously understaffed. It is not uncommon for a single front-line security officer to be directly responsible at one time for supervision of up to four housing units consisting of more than 150-200 detainees.

77.     For at least six consecutive years from 2016 to 2021, inspectors from the South Carolina Department of Corrections found that ASGDC was operating with chronic shortages in security staffing. Concerns were particularly noted about SHU not being staffed adequately to comply with the unit's 24-hour observation standard. Upon information and belief, the report of each annual inspection was provided to Defendant.

78.     On or about February 18, 2020, the Richland County Council Detention Center Ad Hoc Committee met to discuss the conditions at ASGDC, expressing concerns that mentally ill detainees may not be getting proper treatment due to the fact that "the only place to house [severely mentally ill detainees] is in a single cell in the [SHU]."

79.     On or about February 25, 2020, the Detention Center Ad Hoc Committee again met and discussed the conditions at ASGDC, specifically the manner in which housing for mentally ill detainees should be provided.

80.     On or about May 4, 2020, Detention Center Ad Hoc Committee again met, acknowledging there were 109 security staff vacancies at the time of the meeting.

81.     On or about September 28, 2021, another site inspection was conducted by the South Carolina Department of Corrections that reported there were 172 vacant security staff vacancies at ASGDC, an increase of nearly 60 percent in the number of vacancies in less than five months. The Inspector found insufficient personnel to provide 24-hour supervision and processing of detainees and further found that the special purpose cells used for suicide watch in SHU were not being continuously monitored in

accordance with applicable state regulations. The Inspector further noted four housing units were closed due to personnel limitations.

82.    Despite this dangerously low staffing level, ASGDC routinely accepts pre-trial detainees from the U.S. Department of Justice, the City of Columbia, the City of Forest Acres, and the University of South Carolina—for a fee—even though it cannot adequately supervise the detainees presented for booking by the Richland County Sheriff's Office.

83.    The recent escalation of violence at ASGDC was noted in a March 2022 report of the Midlands Gang and Fugitive Task Force of the Richland County Sheriff's Department. In a search of three ASGDC housing units, the Task Force reported seizing, among other things, 13 shanks, 7 cell phones, and 28 grams of marijuana.

84.    ASGDC operates at such low staffing levels that housing units can be completely unsupervised for extended periods. Fights and attacks can occur in cells, pods, or units without officers responding in a timely manner, if at all.

85.    As a result of such limited supervision, coupled with escalating violence, Disabled Detainees are increasingly in need of the protection Defendant can provide, not by locking them down in restrictive housing, but by reducing its population and adopting, an evidence-based classification system that classifies detainees appropriately based not on their pending charges but on their anticipated in-custody behavior.

86.    These extensive deficiencies in the operation of Defendant's security practices increase the risk of violence at ASGDC, placing both detainees and staff at substantial risk of serious harm to which Defendant has been deliberately indifferent.

**F.    The Unsafe and Unsanitary Conditions in the SHU Expose Disabled Detainees to Substantial Risk of Infection and Disease**

87.    Defendant fails to maintain ASGDC, and particularly the SHU, in a sanitary and safe condition. The toilets frequently flood and break, spilling raw sewage into detainees' living quarters. The facility's air-handling system is full of visible mold and in some cases, fecal matter. Disabled Detainees suffer bites from rats, bed begs, fleas, biting flies, fire ants, and mosquitoes. Rats and insects also infect food supplies. Many Disabled Detainees are forced to eat meals in foul, nauseating conditions in their cells, and at times, while in the showers or restrained in a restraint chair.

88.    Disabled Detainees in the SHU are exposed to visible mold and fecal matter in the unit's air handlers.

89.    Suicide watch cells are frequently not cleaned between occupants, and new occupants, most of whom are Disabled Detainees, often find fecal matter, urine, blood, and other bodily fluids on the walls and cells into which they have been transferred for being at risk of suicide.

90.    Cells in SHU are not adequately heated or cooled.

91.    Water in the cell sink in SHU is frequently cloudy and appears contaminated causing many Disabled Detainees to drink it reluctantly, if at all, concerned with developing gastro-intestinal ailments.

92.    On the infrequent occasions when Disabled Detainees in SHU are permitted to shower, there is no hot water.

93.    In the SHU, Defendant operates large, industrial grade fans through the unit that blow constantly at high decibels. The operation of these fans exposes Disabled Detainees, as well as other detainees and staff alike, to substantial risk of permanent hearing loss.

94.    Because of the severely low staffing levels at ASGDC, Defendant has no adequate procedure to evacuate the facility, but particularly the SHU, in the event of a fire or other emergency.

95.    Defendant's failure to provide safe, decent, and sanitary conditions in the SHU expose Disabled Detainees to substantial risk of serious harm of which Defendant is aware and deliberately indifferent.

**G.    Knowledge of Defendant**

96.    Defendant has acted and continues to act, under the color of law with respect to all matters alleged herein. All of the conditions, policies, customs, and practices described herein are the result of, and pursuant to, acts and omissions of Defendant.

**H.    Necessity for Injunctive Relief; No Adequate Remedy at Law**

97.    Defendant has acted and continue to act in violation of the law as described herein. As a proximate result of Defendant's policies, customs practices, acts, and omissions, Disabled Detainees are at substantial risk of suffering and will, in fact, suffer serious and irreparable physical, psychological, mental, and emotional injuries if such policies, customs practices, acts, and omissions continue unabated. Neither Plaintiff, nor the Disabled Detainees have a plain, adequate, or complete remedy at law to redress the wrongs described herein.

<u>**FOR A FIRST CAUSE OF ACTION**</u>
(Declaratory Judgment: Substantive Due Process Under the Fourth
and Fourteenth Amendments to the U.S. Constitution)

98.    Plaintiff repeats and realleges the allegations set forth herein in paragraphs 1 through 89 above, incorporating the allegations herein by reference.

99.     When Defendant takes a Disabled Detainee into custody, it assumes a duty under the Fourth and Fourteenth Amendments to protect the Disabled Detainee from harm and substantial risks of serious harm.

100.    Disabled Detainees held at the ASGDC have substantive due process rights that include, but are not limited to: the right to be free from any punishment while they are detained pending trial; the right to be free from and protected from serious physical, psychological, and emotional harm; the right to necessary treatment, care, and services in an integrated setting; the right not to deteriorate physically, psychologically, or emotionally while in state custody; and the right to be free from substantial risks of the above-mentioned harms.

101.    The conditions of confinement at ASGDC and Defendant's policies, customs, practices, acts, and omissions complained of herein constitute the impermissible punishment of pretrial detainees for which no legitimate governmental purpose exists.

102.    Defendant knows of the substantial risks of serious harm that Disabled Detainees will suffer as a result of these practices, customs, and policies. Defendant's action and inaction shock the conscience and are in deliberate indifference to serious, known health and safety needs of the Disabled Detainees, and create substantial risks of serious harm in violation of the Disabled Detainees' rights under the Fourth and Fourteenth Amendments.

103.    The conditions of confinement at ASGDC and Defendant's policies, customs, practices, acts, and omissions complained of herein have also resulted in the imposition of disciplinary punishment and other restrictions on Disabled Detainees without

notice, opportunity to contest or appeal the restrictions, or other constitutionally adequate procedural due process as guaranteed by the Fourteenth Amendment to the United States Constitution.

104.    Consequently, Plaintiff is entitled to a declaratory judgment declaring that Defendant has violated the constitutional rights of the Disabled Detainees as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

## SECOND CAUSE OF ACTION
(Declaratory Judgment: Eighth and Fourteenth Amendments)

105.    Plaintiff repeats and realleges the allegations set forth herein in paragraphs 1 through 92 above, incorporating the allegations herein by reference.

106.    The Eighth Amendment prohibits the imposition of cruel and unusual punishment on convicted individuals and, in some cases, on individuals incarcerated pending disposition of criminal charges.

107.    Defendant's operation of ASGDC through its policies, customs, practices, acts, and omissions have subjected Disabled Detainees to substantial risk of serious harm and violated the Disabled Detainees rights to be protected from cruel and unusual punishment in each of the following respects:

  a.  Failing to provide Disabled Detainees adequate mental health services;

  b.  Confining Disabled Detainees for prolonged periods in restrictive housing without the provision of adequate mental health treatment and supervision;

  c.  Placing Disabled Detainees on suicide watch in a non-therapeutic setting without providing adequate mental health services or appropriate supervision;

   d.   Engaging in excessive use of force against Disabled Detainees by confining them in shower stalls for extended periods and in restraint chairs after the limited behavioral justification for placement in such chairs has been extinguished;

   e.   Failing to adequately supervise Disabled Detainees and to protect them from escalating violence at ASGDC as a result of severe understaffing, which is compounded by Defendant entering into agreements with other jurisdictions to accept more detainees than it can safely manage and by not operating an appropriate classification system; and/or,

   f.   Failing to maintain ASGDC in a safe, decent, and sanitary condition.

108.   The conditions of confinement to which Disabled Detainees are exposed have inflicted, and continue to inflict, grave and inhumane deprivations, injuries, and risks that violate contemporary standards of decency and are intolerable in today's society.

109.   The risks of serious harm to which to Disabled Detainees are exposed as a result of the conditions of confinement and Defendant's policies, customs, practices, acts, omissions described herein are substantial and known to Defendant.

110.   Despite its knowledge of Disabled Detainees excessive and substantial risks of harm, Defendant has disregarded those risks and failed to take action sufficient to abate the conditions of confinement and revise polices, practices, and customs that form the basis for the violation of the Eighth Amendment.

111.   Plaintiff is entitled to a declaratory judgment that Defendant has violated the constitutional rights of the Disabled Detainees as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution.

## THIRD CAUSE OF ACTION
(Declaratory Judgment: Violation of the ADA)

112.    Plaintiff repeats and realleges the allegations set forth herein in paragraphs 1 through 89 above, incorporating the allegations herein by reference.

113.    Defendant's policies, customs, practices, acts, and omissions complained of herein, and its failure to provide adequate mental health services, deprive the Disabled Detainees of their rights under the ADA.

114.    Defendant does not provide adequate mental health treatment for Disabled Detainees, including sufficient treatment planning, confidential counseling, or individual and group psychotherapy.

115.    Defendant does not provide close supervision of the Disabled Detainees

116.    Defendant does not provide adequate medication management and fails to complement medications with adequate treatment planning and psychotherapy.

117.    Defendant does not have an adequate basic program for the identification, treatment, and supervision of Disabled Detainees with suicidal tendencies.

118.    Defendant discriminates against Disabled Detainees on the basis of their mental illnesses by confining them in the SHU and in shower stalls and restraint chairs, upon information and belief, at materially greater rates and for materially longer periods than non-disabled detainees are subjected to such confinement.

119.    Consequently, Plaintiff is entitled to a declaratory judgment of this Court declaring that Defendants have violated the statutory rights of the Disabled Detainees at ASGDC under the ADA by failing to provide the minimal care necessary to meet the

Disabled Detainees' mental health needs   and by discriminating against Disabled Detainees as set forth above.

## FOURTH CAUSE OF ACTION
### (Preliminary and Permanent Injunctive Relief; 42 U.S.C. § 1983)

120.     Plaintiff repeats and realleges the allegations set forth herein in paragraphs 1 through 92 above, incorporating the allegations herein by reference.

121.     The conditions of confinement at ASGDC and Defendant's policies, customs, practices, acts, and omissions complained of herein have deprived the Disabled Detainees of their respective rights, privileges, and immunities secured by the Constitution and laws of the United States.

122.     As a result of these deprivations, Disabled Detainees are likely to suffer irreparable harm in the absence of injunctive relief requested below.

123.     The balance of equities favors the entry of the requested injunctive relief.

124.     The requested injunctive relief is in the public interest.

125.     Plaintiff is likely to succeed on the merits of its claims.

126.     Consequently, Plaintiff seeks an order preliminarily and permanently enjoining Defendant from operating ASGDC in such a way as to deprive Disabled Detainees of their constitutional and statutory rights and privileges as set forth more fully below in the Prayer for Relief.

## FIFTH CAUSE OF ACTION
### (Attorneys' and Experts' Fees; 42 U.S.C. § 1988(b) & (c))

127.     Plaintiff repeats and realleges the allegations set forth herein in paragraphs 1 through 89 above, incorporating the allegations herein by reference.

128.    Upon prevailing on the preceding claims, Plaintiff will request that it be awarded its reasonable attorneys' fees and costs, including experts' fees, as part of the costs of the action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court:

I.      Assume jurisdiction over this action;

II.     Issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. § 1983, and Rule 57 of the Federal Rules of Civil Procedure, declaring that the conditions of confinement at ASGDC and the policies, practices, acts, and omissions of Defendant complained of herein:

      a.  constitute punishment and subject the Disabled Detainees to denial of substantive and procedural due process, in violation of their constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution;

      b.  are the result of Defendant's deliberate indifference to a substantial risk of serious harm to the Disabled Detainees in violation of the Eighth and Fourteenth Amendments to the United States Constitution;

      c.  deprive Disabled Detainees of their rights under the ADA.

III.    Issue preliminary and permanent injunctions restraining and prohibiting Defendant from confining Disabled Detainees unless and until Defendant complies with the following:

a. Immediately cease and desist from placing Disabled Detainees in a shower stall or locking Disabled Detainees in any room or cell that does not have an operable toilet, an operable sink, natural light, and a bed, other than at times when a detainee is being transported, held temporarily for a formal proceeding, or in an emergency.

b. Immediately cease and desist from confining Disabled Detainees in the SHU unless they are assigned to SHU or other disciplinary unit solely as a result of being charged and convicted of a rules infraction and sentenced to confinement in the SHU for a designated period of time after a determination by a licensed mental health professional ("LMHP") that placement in such restrictive housing will not exacerbate a Disabled Detainee's mental health condition.

c. Immediately cease and desist from placing Disabled Detainees in a restraint chair except by order of an ASDGC security supervisor ("Supervisor") for the sole purpose of preventing self-harm under the following circumstances:

    i. Such an order shall be issued only by a Supervisor with no involvement in the underlying incident that gave rise to the order.

    ii. The Supervisor shall conduct an in-person examination of the detainee and make a determination that the detainee

poses a material threat of self-harm and immediately documents that finding.

iii. Under no circumstances shall a detainee be restrained in the restraint chair with handcuffs, zip-ties, or any other restraints that were not originally part of the chair's design.

iv. After being placed in the restraint chair, the detainee shall be monitored continuously and asked about his or her condition at intervals of at least every 15 minutes.

v. The detainee shall be allowed to move and stretch his or her limbs in accordance with accepted restraint chair practice at regular intervals.

vi. Detainees shall be released from the restraint chair as soon as detainees demonstrate they have regained a reasonable degree of control over their behavior; however, under no circumstances shall detainees be confined in the restraint chair for more than 60 minutes without an in-person examination by an LMHP.

vii. Upon release from the restraint chair, the detainee shall be examined immediately by an LMHP or medical provider.

viii. The restraint chair shall never be used to punish or discipline a detainee.

d. Allow each Disabled Detainee, except those temporarily placed in segregation for safety or disciplinary reasons, a minimum of one (1)

hour per day of outdoor recreation and a minimum of three (3) showers per week.

IV.    Enjoin Defendant from accepting and booking detainees into ASGDC from jurisdictions other than Richland County until such time as ASGDC is adequately and safely staffed.

V.    Order Defendant to develop and implement a comprehensive plan for the correction of the unlawful policies, customs, practices, acts, and omissions complained of herein and to submit this plan to the Court and to the attorneys for the Plaintiff for review including without limitation the following: medical and mental health staffing and services; prolonged use of restrictive housing; security staff recruitment, training, and supervision; use of force; detainee classification system; and sanitation and hygiene.

VI.    Appoint a monitor to oversee implementation of this injunctive relief.

VII.    Retain jurisdiction over Defendant until such time as the Court is satisfied that Defendant's unlawful policies, customs, practices, acts and omissions complained of herein no longer exist.

VIII.    Award Plaintiff the costs of this lawsuit and its reasonable attorneys' fees, costs, and expert's fees; and,

IX.    Order such additional relief as this Court may deem just and proper.

              Respectfully submitted,

              s/Stuart M. Andrews
              Stuart M. Andrews (Fed. I.D. No. 1099)
              Nekki Shutt (Fed I.D. No. 6530)
              Sarah J.M. Cox (Fed. I.D. No. 13166)
              BURNETTE SHUTT & MCDANIEL, PA
              912 Lady Street, 2nd Floor (29201)
              PO Box 1929
              Columbia, South Carolina 29202
              T: 803.904.7915
              F: 803.904.7910
              SAndrews@BurnetteShutt.Law
              NShutt@BurnetteShutt.Law
              SCox@BurnetteShutt.Law

              **ATTORNEYS FOR PLAINTIFF**

Columbia, South Carolina

June 13, 2022