

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION**

| | |
|---|---|
| DISABILITY RIGHTS SOUTH CAROLINA § <br> and 15 UNNAMED PLAINTIFFS, *as Class* § <br> *Representatives on behalf of themselves and* § <br> *others similarly situated*, § <br> Plaintiffs, § <br> § <br> vs. § <br> § <br> RICHLAND COUNTY, § <br> Defendant. § | Civil Action No.: 8:22-1358-MGL |

**ORDER ADOPTING THE REPORT AND RECOMMENDATION
AND DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**I.     INTRODUCTION**

Plaintiffs Disability Rights South Carolina (Disability Rights) and 15 Unnamed Plaintiffs (Unnamed Plaintiffs), as Class Representatives on behalf of themselves and others similarly situated, (collectively, Plaintiffs) filed this civil action against Defendant Richland County (the County). Plaintiffs allege constitutional violations under 42 U.S.C. § 1983 (Section 1983) and discrimination under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq.

This matter is before the Court for review of the Report and Recommendation (Report) of the Magistrate Judge recommending the Court deny Plaintiffs' motion for preliminary injunction. The Report was made in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.

## II. FACTUAL AND PROCEDURAL HISTORY

Unnamed Plaintiffs are current and former pretrial detainees with serious mental illnesses (SMI Detainees) who are or were housed at Alvin S. Glenn Detention Center (ASGDC) in Richland County, South Carolina. ASGDC is owned, managed, operated, staffed, and overseen by the County.

Disability Rights is "a private, not-for-profit South Carolina corporation established as a protection and advocacy organization for the State of South Carolina and charged by state and federal law to protect and advocate for the rights of people with disabilities in South Carolina. On behalf of [SMI Detainees] confined at ASGDC, [Disability Rights] asserts organizational, associational, and statutory standing as a party to this action." Second Amended Complaint ¶ 15.

In Plaintiff's second amended complaint, they allege "dangerous, inhumane, and unconstitutional conditions, policies, and practices . . . exist and have existed for an extended period of time [at ASGDC] because of [the County]'s failure to provide adequate mental health care and safe and sanitary conditions of confinement to [SMI Detainees] in custody at [ASGDC]." *Id.* ¶ 1. Accordingly, Plaintiffs seek declaratory and injunctive relief for inadequate medical treatment, failure to protect, and conditions of confinement under Section 1983, as well as declaratory relief for discrimination under the ADA.

As is relevant here, Plaintiffs' motion for preliminary injunction requests the County be required to:

1. Provide therapeutic services necessary to treat the full range of medical needs of SMI Detainees;
2. Provide adequate structured and unstructured out-of-cell therapeutic activities for SMI Detainees in all Restricted Housing units;
3. Refrain from placing SMI Detainees in cells or pods without access to running water, working toilets, working light fixtures, clean and mildew-free showers with adequate hot and cold water, and access to feminine hygiene products; and

> 4. Refrain from placing SMI Detainees in housing units without direct supervision.

Plaintiffs' Motion at 35.

On December 9, 2024, the Magistrate Judge filed the Report recommending the Court deny Plaintiffs' motion for preliminary injunction. Plaintiffs filed objections on January 7, 2025, and the County replied on January 21, 2025. Having been fully briefed on the relevant issues, the Court will now adjudicate the motion.

### III.    STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court, however, need not conduct a de novo review of the record "when a party makes general and conclusory objections that do not direct the court to a specific error in the [Magistrate Judge's] proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The Court reviews the Report only for clear error in the absence of specific objections. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record to accept the recommendation'").

## IV.     DISCUSSION AND ANALYSIS

As an initial matter, the County disputes Disability Rights' representative and associational standing to bring claims on behalf of SMI Detainees. But, the County "acknowledge[s] [Unnamed Plaintiffs] have standing to assert their individual rights to injunctive relief[.]" The County's Response at 16. And, because the County concedes Unnamed Plaintiffs have standing to sue on behalf of themselves, it is unnecessary for the Court to consider whether Disability Rights has standing. *See Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*, 547 U.S. 47, 53 n.2 (2006) ("[O]ne party with standing is sufficient to satisfy Article III's case-or-controversy requirement."); *Fernandez v. RentGrow, Inc.*, 116 F.4th 288, 295 (4th Cir. 2024) (explaining Article III's standing requirements apply with equally in putative class actions). The Court will therefore proceed to consider Plaintiffs' motion for preliminary injunction.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). It should issue only when the plaintiffs can "establish [1] that [they are] likely to succeed on the merits, [2] that [they are] likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [their] favor, and [4] that an injunction is in the public interest." *Id.* at 20.

The burden is on the parties seeking injunctive relief to show they are entitled to such relief. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 443 (1974). "[A]ll four [*Winter*] requirements must be satisfied." *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated and remanded on other grounds*, 559 U.S. 1089 (2010).

"Given [the] limited purpose [of preliminary injunctions] and given the haste that is often necessary . . . , [they are] customarily granted on the basis of procedures that are less formal and

evidence that is less complete than in a trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Accordingly, the Court "may look to, and indeed in appropriate circumstances rely on, hearsay or other inadmissible evidence when deciding whether a preliminary injunction is warranted." *G.G. ex rel. Grimm v. Gloucester Cnty. Sch. Bd.*, 822 F.3d 709, 725–26 (4th Cir. 2016), *vacated and remanded on other grounds*, 580 U.S. 1168 (2017).

"A preliminary injunction may be characterized as being either prohibitory or mandatory." *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 235 (4th Cir. 2014). "Whereas mandatory injunctions alter the status quo, prohibitory injunctions aim to maintain the status quo and prevent irreparable harm while a lawsuit remains pending." *Id.* at 236 (internal quotation marks omitted) (quoting *Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013)). The Fourth Circuit has "defined the status quo for this purpose to be the last uncontested status between the parties which preceded the controversy." *Id.* (internal quotation marks omitted) (quoting *Pashby*, 709 F.3d at 320).

"Mandatory preliminary injunctive relief in any circumstance is disfavored[] and warranted only in the most extraordinary circumstances." *Taylor v. Freeman*, 34 F.3d 266, 270 n.2 (4th Cir. 1994) (citing *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980)). Or, put differently, "mandatory injunctive relief should be granted only under compelling circumstances inasmuch as it is a harsh remedial process not favored by the courts." *Citizens Concerned for Separation of Church & State*, 628 F.2d 1289, 1299 (10th Cir. 1980). "[W]hen the preliminary injunction is mandatory rather than prohibitory in nature, [the Fourth Circuit's] application of this exacting standard of review is even more searching." *Pashby*, 709 F.3d at 319 (internal quotation marks omitted) (quoting *In re Microsoft Corp. Antitrust Litig. v. Microsoft Corp.*, 333 F.3d 517, 524 (4th

5

Cir. 2003), *abrogated on other grounds by eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)).

Here, Plaintiffs seek mandatory injunctive relief. As the Court noted above, the Magistrate Judge recommends the Court deny such relief. Plaintiffs, however, raise four specific objections to the Report. The Court will consider each objection in turn.

### A. Whether Plaintiffs have demonstrated a likelihood of success on the merits of their inadequate medical treatment claim

Plaintiffs first contend "[t]he Magistrate Judge erred in finding that the record was not clear that the inadequacies in Defendant's mental health program reported in the 2014 Pulitzer Management Study are currently still in effect and that such systemic limitations on the medically necessary treatment available to SMI Detainees violate their well-established constitutional right to medical care under *Bowring v. Godwin*." Plaintiffs' Objections at 2; *see Bowring v. Godwin*, 551 F.2d 44, 47 (4th Cir. 1977) (holding prison inmates are "entitled to psychological or psychiatric treatment if a physician or other health care provider, exercising ordinary skill and care at the time of observation, concludes with reasonable medical certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial"). This objection contains three subparts.

#### 1. Whether the Magistrate Judge erred in concluding the County's provision of limited mental health treatment overcomes the County's deliberate withholding of more intense forms of medically necessary treatment

At the outset, Plaintiffs maintain "it was error . . . for the Magistrate Judge to conclude that because Plaintiff[s] acknowledge[] [the County] provides limited mental health treatment, e.g., medication management, crisis interventions, and brief check-ins, that such services somehow may

6

overcome the deliberate withholding of more intense forms of medically necessary treatment, particularly when more limited means of treatment are ineffective." Plaintiffs' Objections at 2–3.

The Magistrate Judge referenced Plaintiffs' concession "medication, crisis stabilization, and brief check-ins are all forms of therapy that are being provided to SMI Detainees at ASGDC." Report at 29 n.14. But, the Magistrate Judge also noted Plaintiffs nevertheless "argue such practices, as implemented at ASGDC, are insufficient to satisfy the constitutional minima." *Id.* And, the Court is unable to discern any manner in which the Magistrate Judge concluded the County's provision of medication, crisis stabilization, and brief check-ins overcomes its withholding of more intensive treatment forms, particularly if those forms are medically necessary. Indeed, the Magistrate Judge acknowledged crisis stabilization and medication management may be "insufficient to satisfy the Constitution[.]" Report at 28.

> **2.    Whether the Magistrate Judge erred in concluding Plaintiffs' reliance on the 2014 Management Study is insufficient to show it is indisputably clear ASGDC's mental health treatment program and conditions violate SMI Detainees' constitutional rights**

In 2014, Pulitzer/Bogard & Associates, LLC (P/BA) submitted a final report of its study of ASGDC's management and operations (the 2014 Management Study). As a result of the 2014 Management Study, P/BA found "[m]ental health treatment at ASGDC is limited to crisis stabilization and medication management." Plaintiffs' Motion at Ex. 14. Elaborating upon this finding, P/BA explained

> [t]he focus of mental health treatment at ASGDC is limited to crisis intervention, stabilization and psychiatric medication management. There is little opportunity for ongoing counseling, no group counseling, and no special mental health programs. The one exception is that a caseworker from Columbia Area Mental Health sees those inmates who are on the mental health center's special needs caseload once every thirty days to support planning for reentry into the community upon release.

*Id.*

The Magistrate Judge determined "Plaintiffs' reliance on the 2014 Management Study . . . is insufficient at this time to show it is 'indisputably clear' that the current mental health treatment program and conditions at ASGDC violate SMI Detainees' constitutional rights." Report at 28 (quoting *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 612 F. Supp. 3d 563, 579 (E.D. Va. 2020)).  But, Plaintiffs maintain "[t]he record reveals [the County]'s self-imposed limitation on the scope of medically necessary services provided to SMI Detainees has remained in effect since the 2014 . . . Management Study, notwithstanding the Magistrate Judge's finding to the contrary." Plaintiffs' Objections at 3.  The Court is unconvinced.

In January 2024, Laurrinda Saxon-Ward (Saxon-Ward), who then served as ASGDC's Mental Health Services Site Manager, testified ASGDC offers "individual therapy" called "crisis management." Saxon-Ward's Deposition at 91.  Saxon-Ward stated although she was unable to recommend intense individual counseling for short-term detainees, she did provide crisis management, or brief solution therapy. *Id.* at 93.  Saxon-Ward further explained clinicians were unable to sit down one-on-one with their patients given the reduced privacy inherent in a detention center, but they were expected to identify each patient's medical needs and coordinate services to meet those needs. *Id.* at 240.

Similarly, Patti Green (Green)—former Discharge Planner with Advanced Correctional Healthcare, Inc. (ACH), ASGDC's mental health service provider—testified she met with ACH patients every thirty days to "find out how they're doing in the dorms, find out how they're doing on their medicine[,]" "ask[] them if they were suicidal[,]" and, if needed, "schedule them with the provider." Green's Deposition at 24–25.  But, Green explained she was untrained in conducting therapy as a social worker. *Id.* at 27.  And, when asked whether Saxon-Ward ever asked Green to perform therapy, Green replied, "No. [Saxon-Ward] told me we don't do therapy. . . . She said it's

not the place for that; if you open wounds, you can't close them; we don't have time for that so we don't do therapy." *Id.*

Although it is unclear whether ACH clinician Judy Lassiter (Lassiter) still works at ASGDC, Lassiter testified "there are no groups, no therapy groups or other social or psychosocial groups" in the mental health unit for women at ASGDC Unit X-Ray. Lassiter's Deposition at 114.

Plaintiffs' subject matter expert, Dr. Nicole Johnson (Johnson), attests "[t]here is minimal to no behavioral health treatment occurring at ASGDC[,]" Johnson's Declaration ¶ II.B.1, "there is no delineation as to the level of acuity of patients at ASGDC[] [with] most patients receiv[ing] the same level of engagement[,]" *id.* ¶ II.B.2, "there are no formal treatment plans done at ASGDC[,]" Johnson's Declaration ¶ II.B.3, "[t]he existing system in place to categorize patients based on level of acuity is inadequate[,]" *id.* ¶ II.B.5, and "[t]here is a complete absence of programming for ASGDC detainees receiving mental health services[,]" *id.* ¶ II.B.6.

But, Dr. Melissa Caldwell (Caldwell), who currently oversees mental health staffing at ASGDC, declares ACH provides around-the-clock "crisis management and acute care including suicide prevention, supportive interventions including education in coping skills, medication education and management, anger management skills, hygiene, and further individualized care . . . to all detainees who require them. They include a variety of psychosocial and pharmacological therapies." Caldwell's Declaration ¶ 6. Caldwell explains "[s]afety planning, counseling, supportive interventions, education (adaptive skills), [and] psychotherapy[] are provided to alleviate symptoms, attain appropriate functioning, and prevent relapse. Interventions are currently provided in an individual format." *Id.*

Moreover, Caldwell states ACH providers "develop[] and document[] individualized treatment plans for each detainee that determine[] the appropriate treatment option for the detainee

9

based on their functionality and acuity levels within the jail as well as diagnostic presentation. . . . These treatment plans are continually reviewed and updated as the mental health staff visit the detainee." *Id.* ¶ 10.  Caldwell asserts ASGDC also has gender-specific mental health pods, which "are extremely rare in the correctional field[,]" that allow concentrated staff members to make contact with SMI Detainees, protect them from vulnerability, and provide improved monitoring on a daily basis.  *Id.* ¶ 14.

Importantly, "if during any assessments, the mental health and/or medical staff determines that any detainee requires a higher level of medical and/or mental health care that is not available at . . . ASGDC," Caldwell explains "the staff can refer the detainee to the emergency room or another community provider."  *Id.* ¶ 17.  And, between May and August 2024, Caldwell attests ACH clinicians performed 126 "Mental Health Non-Contact Professional Activities (e.g., consult with community providers)"; 1,948 "Mental Health Services Clinical Contacts (e.g., counseling, psychotherapy)"; and 587 "Mental Health Services Clinical Contact-Psychiatry."  *Id.* ¶¶ 20–23.

Additionally, Crayman Harvey (Harvey), the current Director of ASGDC, explains he created a mental health unit for SMI Detainees in Unit Mike upon his arrival to the facility in 2022.  Harvey's Affidavit ¶ 25.  Harvey explains Unit Mike consists of eight pods, and each pod contains eight individual cells and its own day room with a television.  *Id.* ¶ 25.  According to Harvey, "[e]xcept for routine lockdowns for medication pass and meal pass, . . . SMI [D]etainees in [Unit] Mike are out of their cells and interacting with the other detainees in their pod."  *Id.*  They also have access to an outdoor recreation area and personal electronic tablets with free "mental health programming, such as substance abuse classes, anger management classes, anxiety management, meditation and coping skills."  *Id.* ¶¶ 17, 25.

Harvey attests, when an SMI Detainee arrives at ASGDC, he or she "may stay in an individual cell in the intake area for observation and medication management for a temporary period of time before being assigned to [Unit] Mike." *Id.* ¶ 28. But, Harvey notes "[t]hat measure is taken because there is a mental health professional in the intake area on a full-time basis who can monitor that detainee more closely." *Id.*

As is clear from the foregoing discussion, there are critical discrepancies between the evidence produced by the parties. Given these inconsistencies, the Court agrees with the Magistrate Judge it is unclear whether "the deficiencies identified in the 2014 Management Study persist at the present time[.]" Report at 28. Although crisis stabilization and medication management, "as implemented at ASGDC, might be insufficient to satisfy the Constitution," the Court is nevertheless persuaded the matter "remains heavily disputed by the parties and there is insufficient evidence at this time to satisfy the high burden Plaintiffs must show to establish an indisputably clear right to relief for issuance of a mandatory injunction prior to a resolution on the merits of [their inadequate medical treatment claim]." *Id.*

> 3. *Whether the Magistrate Judge erred in concluding Plaintiffs failed to show any of the* **Ruiz v. Estelle** *components require the intensive individual therapy and therapeutic programming Johnson describes in her declaration*

By way of background, the court in *Ruiz v. Estelle* identified the following six components of a constitutionally adequate mental health treatment program:

> First, there must be a systematic program for screening and evaluating inmates in order to identify those who require mental health treatment. Second, . . . treatment must entail more than segregation and close supervision of the inmate patients. Third, treatment requires the participation of trained mental health professionals, who must be employed in sufficient numbers to identify and treat in an individualized manner those treatable inmates suffering from serious mental disorders. Fourth, accurate, complete, and confidential records of the mental health treatment process must be maintained. Fifth, prescription and administration of behavior-altering medications in dangerous amounts, by dangerous methods, or without appropriate supervision and periodic evaluation, is an unacceptable method

11

of treatment. Sixth, a basic program for the identification, treatment, and supervision of inmates with suicidal tendencies is a necessary component of any mental health treatment program.

503 F. Supp. 1265, 1339 (S.D. Tex. 1980) (citations omitted), *rev'd in part on other grounds*, 679 F.2d 1115 (5th Cir. 1982). The Magistrate Judge "f[ound] these six *Ruiz* components to be persuasive criteria in determining whether the mental health treatment services at ASGDC are constitutionally adequate." Report at 25. And, the parties evidently agree.

Plaintiffs, though, insist the Magistrate Judge "erroneously conclude[d] . . . [they] failed to show any of the *Ruiz* components . . . require the intensive individual therapy and therapeutic programming . . . Johnson describes in her [declaration]." Plaintiffs' Objections at 8. Specifically, Plaintiffs contend the Magistrate Judge (1) improperly relied on unresponsive documents from Caldwell and Harvey without referencing relevant deposition testimony from Saxon-Ward, Green, and Lassiter and (2) erroneously "fail[ed] to find [the County]'s decision to withhold medically necessary individual therapeutic services, as described by its own staff, did not satisfy the [second] *Ruiz* . . . component." *Id.* at 9. Again, the Court is unconvinced.

> a. *Whether the Magistrate Judge improperly relied on unresponsive documents from Caldwell and Harvey without referencing relevant deposition testimony from Saxon-Ward, Green, and Lassiter*

As the Magistrate Judge noted, Caldwell's declaration extensively details the mental health services ACH provides at ASGDC, and Harvey's affidavit addresses his creation, implementation, and administration of Unit Mike, which is exclusively for SMI Detainees. These topics are obviously responsive to Plaintiffs' inadequate medical treatment claim, as the success of that claim hinges on the constitutional adequacy of ASGDC's mental health treatment program. *See* Report at 24 ("Once an inmate has demonstrated entitlement to mental health treatment under [*Bowring*], the inquiry then turns to the adequacy of that treatment.").

Plaintiffs contend Saxon-Ward, Green, and Lassiter testified ACH clinicians "do not provide traditional therapeutic services to detainees solely because detainees were incarcerated at ASGDC, not for reasons having anything to do with their medical condition."  Plaintiffs' Objections at 8.  But, even assuming their deposition testimony could be reasonably construed in this manner, it would still be inconsistent with the evidence set forth in Caldwell's declaration and Harvey's affidavit.

> **b.    *Whether the Magistrate Judge erroneously "fail[ed] to find [the County]'s decision to withhold medically necessary individual therapeutic services, as described by its own staff, did not satisfy the [second] Ruiz . . . component"***

Plaintiffs note certain similarities between the program found to be unconstitutional in *Ruiz* and the description of ASGDC's mental health treatment program in Johnson's declaration. Further, Plaintiffs cite portions of Johnson's declaration in which they claim Johnson identified SMI Detainees for whom "psychotherapy and similar intensive individualized treatment" is medically necessary.  Plaintiffs' Objections at 11.

The County, on the other hand, maintains ASGDC provides "individualized treatment planning including crisis management and individualized counseling by qualified mental health professionals . . . and self-help programs available in electronic format[,]" and such individualized treatment planning satisfies the second *Ruiz* component.  The County's Reply at 7; *see Ruiz*, 503 F. Supp. at 1339 (explaining "treatment must entail more than segregation and close supervision of the inmate patients").  Although the County acknowledges group therapy, out-of-cell programming, and other therapeutic activities may be desirable for SMI Detainees, it nevertheless asserts these services are medically unnecessary under *Bowring*, 551 F.2d at 48.

As an initial matter, it is unclear whether Johnson's interviews with D001, D003, D005, and D006—the individuals for whom Plaintiffs contend "psychotherapy and similar intensive

13

individualized treatment" is medically necessary—constitute observations within the scope of *Bowring*. This is so because neglected to conclude with reasonable medical certainty the three requirements of medical necessity had been satisfied as to these individuals. *See Bowring*, 551 F.2d at 47 (explaining psychological or psychiatric treatment is medically necessary only "if a physician or other health care provider, exercising ordinary skill and care at the time of observation, concludes with reasonable medical certainty" the existence of three separate factors).

Even still, in light of the conflicting evidence detailed above, the Court agrees with the Magistrate Judge's determination "there remains a genuine dispute with conflicting evidence as to whether the mental health treatment program at ASGDC confirms to the six *Ruiz* components and thus satisfies the constitutional minima." Report at 31.

*****

For all these reasons, the Court holds Plaintiffs are unable to demonstrate a likelihood of success on the merits of their inadequate medical treatment claim. The Court will thus overrule this objection.

### B.     *Whether Plaintiffs have demonstrated a likelihood of success on the merits of their failure to protect claim*

Plaintiffs next contend "the Magistrate Judge erred in concluding [they] did not clearly establish a likelihood of success on the merits of [their failure to protect] claim." Plaintiffs' Objections at 11. The Magistrate Judge, however, neglected to render any such conclusion and instead implied Plaintiffs were likely to succeed on the merits of this claim. *See* Report at 32–33 ("The fact that ASGDC is significantly understaffed is not in dispute. Plaintiffs may ultimately show that these staffing shortages rise to the level of a constitutional violation. The claim regarding staffing levels and the associated safety dangers leans most heavily in [Plaintiffs'] favor."). The Court will therefore overrule this objection, as well.

### C.    Whether the balance of the equities and public interest tips in favor of the County on their remaining claims

As an initial matter, where the government is the party opposing injunctive relief, the balance of equities and public interest prongs of the *Winter* requirements merge. *Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

Plaintiffs assert the Magistrate Judge's conclusion "the balance of the equities and public interest tips in favor of [the County] is wholly without support in the record." Plaintiffs' Objections at 24. Plaintiffs maintain, "[i]n the absence of any evidence of harm presented by [the County,] . . . the Magistrate Judge places undue weight on unsupported assumptions in finding the burden created by the issuance of a preliminary injunction would outweigh the reality of the daily harms to which SMI Detainees are subjected." *Id.* at 25. And, they contend "the record is replete with evidence of the constant threat of individual and systemic harm to SMI Detainees and cannot be properly minimized due to concern about the unspecified, speculative effects of requiring [the County] to develop and propose a means of providing necessary care and protection to SMI Detainees." *Id.* But, the Court is unpersuaded.

"Traditionally, federal courts have adopted a broad hands-off attitude toward problems of prison administration." *Procunier v. Martinez*, 416 U.S. 396, 404 (1974), *overruled in part on other grounds by Thornborough v. Abbott*, 490 U.S. 401 (1989). Indeed, "[i]t is well established that absent the most extraordinary circumstances, federal courts are not to immerse themselves in the management of state prisons or substitute their judgment for that of the trained penological authorities charged with the administration of such facilities." *Taylor*, 34 F.3d at 268; *see Inmates of Occoquan v. Barry*, 844 F.2d 828, 841 (D.C. Cir. 1988) ("[C]ourts are not to be in the business of running prisons. The cases make it plain that questions of prison administration are to be left to the discretion of prison administrators."). And, "the principle of deference enunciated" in cases

"concern[ing] restrictions governing convicted inmates" equally applies to pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 547 n.29 (1979).

"Even where there has been a finding on the merits that unconstitutional conditions exist, federal courts should proceed cautiously and incrementally in ordering remediation so as not to assume the role of prison administrators." *Taylor*, 34 F.3d at 269. But, "intrusive and far-reaching federal judicial intervention in the details of prison management is justifiable only where state officials have been afforded the opportunity to correct constitutional infirmities and have abdicated their responsibility to do so." *Id.* And, "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3636(a)(1)(A); *id.* at § 3636(g) (defining "prison" to include local detention centers).

Moreover, "where state penal institutions are involved, federal courts have a further reason for deference to the appropriate prison authorities." *Procunier*, 416 U.S. at 405; *see Preiser v. Rodriguez*, 411 U.S. 475, 491–92 (1973) ("It is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons."); *see also Torcasio v. Murray*, 57 F.3d 1340, 1346 (4th Cir. 1995) ("Although the unwillingness of federal courts to intrude into state prison management is in part due to the fact that the judiciary lacks the expertise of the executive and the legislature in such matters, it is in significant measure motivated by the realization that principles of comity and federalism apply with special force in the context of correctional facilities.").

Simply put, "sweeping intervention in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts. This is . . . especially true where

mandatory injunctive relief is sought and only preliminary findings as to the plaintiffs' likelihood of success on the merits have been made." *Id.*

Here, Plaintiffs seek prospective mandatory injunctive relief. Thus far, the Court has made only preliminary findings as to Plaintiffs' likelihood of success on the merits of their claims. The Court acknowledges Plaintiffs' claims implicate certain constitutional rights. But, given the precedent set forth above, the Court is unable to conclude the balance of the equities and public interest tips in favor of the County. The Court therefore agrees with the Magistrate Judge, "at this stage of the proceedings and upon the record presently before the Court, . . . intervention in the day-to-day operations of ASGDC would be improper." Report at 40. Accordingly, the Court will overrule this objection, too.

*****

As explained above, Plaintiffs must satisfy all four *Winter* requirements for a preliminary injunction to issue. *Real Truth About Obama, Inc.*, 575 F.3d at 346. Inasmuch as Plaintiffs are unable to meet the success-on-the-merits requirement as to their inadequate medical treatment claim and the balance-of-the-equities and public interest requirements as to their remaining claims, it is unnecessary for the Court to address Plaintiffs' remaining objection. *See Schilling v. Schwitzer-Cummins Co.*, 142 F.2d 82, 84 (D.C. Cir. 1944) (explaining the Court is "not require[d] or encourage[d] . . . to assert the negative of each rejected contention as well as the affirmative of those which [it] find[s] to be correct").

### V.     CONCLUSION

After a thorough review of the Report and the record in this case under the standards set forth above, the Court overrules Plaintiffs' objections, adopts the Report, and incorporates it

17

herein.  Therefore, it is the judgment of the Court Plaintiffs' motion for preliminary injunction is **DENIED**.

    **IT IS SO ORDERED.**

Signed this 31st day of March 2025, in Columbia, South Carolina.

                                            s/ Mary Geiger Lewis
                                            MARY GEIGER LEWIS
                                            UNITED STATES DISTRICT JUDGE