UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Disability Rights South Carolina, and 15 Unnamed Plaintiffs as Class Representatives on behalf of themselves and others similarly situated, | ) ) ) ) ) | C/A No. 8:22-cv-1358-MGL-WSB |
| Plaintiffs, | ) ) | **REPORT AND RECOMMENDATION** |
| v. | ) ) ) | |
| Richland County, | ) ) | |
| Defendant. | ) ) ) | |

This case is before the Court on Plaintiffs' Motion for Class Certification. ECF No. 124. Several individual detainees (the "Named Plaintiffs")[1] at the Alvin S. Glenn Detention Center ("ASGDC") in Richland County, South Carolina, along with Disability Rights South Carolina ("DRSC") (together the "Plaintiffs"), brought this action against Richland County ("Defendant") asserting claims for constitutional violations pursuant to 42 U.S.C. § 1983 and discrimination under Title II of the Americans with Disabilities Act ("ADA"). The undersigned United States Magistrate Judge is authorized to review all pretrial motions in this case and submit findings and recommendations to the district court under 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B) (D.S.C.). For the reasons below, Plaintiffs' Motion for Class Certification should be granted.

---

[1] The Second Amended Complaint identified fifteen Named Plaintiffs who are presently or were previously detainees at ASGDC. ECF No. 99 at 6–10, ¶¶ 17–31. The Named Plaintiffs are proceeding in this action using numerical designations rather than their names to protect their identities. *Id*. at 5, ¶ 16. The identities of the Named Plaintiffs were disclosed to the Court in a sealed exhibit attached to the Second Amended Complaint. *See id*. at 5, ¶¶ 15–16; ECF No. 99-1 (sealed exhibit). Plaintiffs have voluntarily dismissed four of the Named Plaintiffs as putative class representatives. ECF Nos. 123; 129. As such, the Named Plaintiffs presently include the following eleven individuals: CR2, CR3, CR4, CR5, CR6, CR9, CR10, CR11, CR12, CR14, and CR 15. *See* ECF Nos. 99 at 6–10, ¶¶ 17–31; 123 at 1.

## BACKGROUND

**Relevant Procedural History**

Plaintiffs commenced this action by filing a Complaint on April 28, 2022. ECF No. 1. Defendant filed an Answer to the Complaint on May 20, 2022. ECF No. 9. On June 13, 2022, Plaintiffs filed an Amended Complaint, ECF No. 12, and Defendant filed an Answer to the Amended Complaint on June 27, 2022, ECF No. 19. On April 17, 2024, with leave of the Court, Plaintiffs filed a Second Amended Complaint. ECF No. 99. On April 30, 2024, Defendant filed an Answer to the Second Amended Complaint. ECF No. 102. The Second Amended Complaint is the operative pleading in this matter.

Plaintiffs filed a Motion for Class Certification on September 5, 2024. ECF No. 124. Defendant filed a Response in Opposition on October 3, 2024. ECF No. 139. Plaintiffs filed a Reply on October 10, 2024. ECF No. 143. On January 7, 2025, the Court held a hearing on the Motion. ECF No. 168. Based upon issues raised at that hearing, and at the direction of the Court (*see* ECF No. 171), Defendant filed a Supplement in support of its Response in Opposition on January 16, 2025. ECF No. 180. Plaintiffs filed a Reply on January 21, 2025. ECF No. 181. The Motion for Class Certification is ripe for disposition.[2]

**Case Summary**

The Named Plaintiffs are current and former pretrial detainees at ASGDC with serious mental illnesses. ECF Nos. 115 at 1; 99 at 1, ¶ 1. The Named Plaintiffs seek to be representatives of a putative class of "detainees who suffer from serious mental illness and who are presently confined at ASGDC"—the "SMI Detainees." ECF No. 99 at 5, ¶ 16. The Second Amended

---

[2] Also pending are the parties' cross Motions for Summary Judgment. ECF Nos. 178; 179. The Court addresses those Motions in a separate Report and Recommendation.

Complaint defines "SMI Detainees" as individuals who, at any time since April 28, 2022, have been or will be confined at ASGDC and who have been or will be (1) assigned to a "mental health" housing unit at ASGDC; (2) diagnosed by a psychiatrist or other licensed clinical mental health professional with certain mental illnesses; (3) diagnosed by a psychiatrist or other licensed clinical mental health professional with another mental disorder that has resulted in significant functional impairment (as defined therein); or (4) has been admitted to a licensed behavioral health or psychiatric hospital. *Id.* at 11–12, ¶ 33; *see also* ECF No. 115 at 3–4. According to Plaintiffs, a "large number" of SMI Detainees—comprising 60 to 70% of the population at ASGDC—"are present in every housing unit and every phase" of ASGDC. ECF No. 115 at 5; *see also* ECF No. 99 at 12, ¶ 35.

ASGDC is owned, managed, operated, staffed, and overseen by Richland County. ECF No. 99 at 10, ¶ 32. DRSC is "a private, not-for-profit South Carolina corporation established as a protection and advocacy organization for the State of South Carolina and charged by state and federal law to protect and advocate for the rights of people with disabilities in South Carolina. On behalf of SMI Detainees confined at ASGDC, DRSC asserts organizational, associational, and statutory standing as a party to this action." *Id.* at 5, ¶ 15. Plaintiffs seek injunctive and declaratory relief because Defendant continues to violate SMI Detainees' constitutional rights by subjecting them to deliberate indifference to their serious medical needs, unconstitutional conditions of confinement, and discrimination in violation of the ADA. *Id.* at 1–4, ¶¶ 1–9.

### General Allegations

Plaintiffs bring this action "to address the dangerous, inhumane, and unconstitutional conditions, policies, and practices that exist and have existed for an extended period of time because of Defendant's failure to provide adequate mental health care and safe and sanitary

conditions of confinement to [SMI Detainees] in custody at [ASGDC]." *Id.* at 1, ¶ 1. Plaintiffs contend that Defendant has operated ASGDC in a manner deliberately indifferent to SMI Detainees' substantial risk of serious harm in the following respects:

- Failing to protect SMI Detainees from harm by operating housing units with inadequate supervision by detention officers and, on many occasions, with no supervision.

- Failing to protect SMI Detainees, even when supervised, by its deliberate indifference to the prevalence of contraband weapons and drugs throughout the facility and to the robberies, beatings, extortions, sexual assaults, and stabbings that have occurred and continue to occur under the watch of ASGDC detention officers and supervisors.

- Confining SMI Detainees in squalid, unsanitary conditions without properly functioning toilets, lavatories, showers, lighting, and sufficient access to drinking water whether detainees are confined in single cells, pod-based housing units, or open-bay dormitories.

- Locking down SMI Detainees for prolonged periods in isolated cells or crowded pods without charges, without opportunities to contest the confinement, without prior consultation with a psychiatrist or other medical provider, and without adequate recreational opportunities.

- Failing to provide to SMI Detainees adequate mental health services, including the following: the proper administration of psychotropic medications; the development of treatment plans that organize the delivery of mental health services in a manner that corresponds to SMI Detainees' various levels of acuity; and the delivery of the full range of such care, including, without limitation, individual therapy, group therapy, crisis stabilization, and out-of-cell and out-of-pod structured and unstructured therapeutic activities for individuals in prolonged periods of isolation.

- Subjecting SMI Detainees to excessive force by locking them in shower stalls, restraint chairs, and other means of restricting the movement of detainees for punitive purposes without regard to the detainees' ongoing behavior, and without prior psychiatric or medical consultation.

- Isolating SMI Detainees who attempt suicide or express suicidal ideations in non-therapeutic, punitive settings, where they are confined without proper assessment, mental health treatment, or sufficient observation.

*Id*. at 2–3, ¶ 2.

### *Alleged Constitutional Violations as to the Named Plaintiffs*

Regarding the alleged constitutional violations suffered by the Named Plaintiffs, the Second Amended Complaint alleges as follows. CR2 has a history of serious mental illness, including a diagnosis of bipolar disorder and a prior diagnosis of anxiety with a history of panic attacks. *Id*. at 6, ¶ 18. CR2 is being denied access to medications to treat his bipolar disorder. *Id*. CR2 has been assaulted and witnessed numerous stabbings while his dorm was left unsupervised by Defendant. *Id*. CR2 has requested psychotherapy and asked to be prescribed mental health medication but has not received the requested services. *Id*.

CR3 has been diagnosed with schizophrenia. *Id*. at 6, ¶ 19. CR3 has been in lockdown for months for a disciplinary investigation without any paperwork to substantiate disciplinary charges, without meeting with hearing officers, and longer than CR3 anticipated. *Id*. CR3 is allowed out of his cell for showers three days per week and ten-minute phone calls every other day. *Id*. Despite his mental health diagnosis, CR3 has not been provided psychotherapy or recreation. *Id*.

CR4 has been diagnosed with anxiety. *Id*. at 7, ¶ 20. CR4 is prescribed medication for her diagnosis, but she has not been provided psychoeducation on the need for such medicine or the potential benefits, risks, and alternatives to such medication. *Id*. CR4 is locked in a cell shared with another female for the majority of every day and does not have a working light or sink in her cell. *Id*. CR4 only has access to drinking water when guards are present in her dorm and allow her to leave her cell, but her dorm is left unsupervised for most of the day. *Id*.

CR5 has been diagnosed with depression and anxiety.  *Id*. at 7, ¶ 21.  CR5 does not have regular access to mental health providers and has not been provided psychotherapy.  *Id*.  CR5 has made regular requests for sick call without any response from medical staff.  *Id*.  CR5 has been harassed and attacked by other detainees after jail staff improperly disclosed his medical condition. *Id*.  CR5 has been forced to seek protective custody but is still housed in the same unit with his primary aggressor.  *Id*.

CR6 has been diagnosed with anxiety and posttraumatic stress disorder.  *Id*. at 7, ¶ 22.  CR6 is a veteran with numerous medical illnesses, including being confined to a wheelchair most of the time and suffering congestive heart failure.  *Id*.  CR6 seldom sees detention officers in his unit, which is run "by strong detainees who bully and rob the weaker detainees."  *Id*.  CR6 was stabbed by another detainee and has witnessed violence by guards and detainees.  *Id*.

CR9 has been treated for serious mental illness for over 20 years prior to his confinement at ASGDC.  *Id*. at 8, ¶ 25.  However, CR9 was not assessed, during intake, by a mental health provider, who could prescribe medications.  *Id*.  CR9 was detained in a cramped, crowded holding tank with more than 30 other detainees for a week with one toilet and sink, sleeping on the floor shoulder to shoulder without a mattress.  *Id*.  "[I]t was uncommon for an officer to be present during the evening shift" and detainees frequently presented street knives and shanks, threatening and attacking vulnerable detainees.  *Id*.

CR10 has been assigned to the ASGDC mental health unit because of the serious condition of his mental illness.  *Id*. at 9, ¶ 26.  CR10 has been placed on suicide watch on multiple occasions, but he was never assessed nor supervised while on suicide watch.  *Id*.  CR10 remained on suicide watch for 33 days before being released.  *Id*.  CR10 was also the victim of a severe attack in which

he was stabbed in the head, neck, and back 11 times and had to be taken to a local hospital by EMS. *Id*. No officer was present in the unit during the assault. *Id*.

CR11 has been diagnosed with schizophrenia. *Id*. at 9, ¶ 27. CR11 receives no treatment for his mental illness other than medications, which on numerous occasions have not been provided as prescribed. *Id*. CR11 is not assigned a bed or a cell, and he sleeps in a plastic crate with a mattress on the floor of an open unit along with 30 other men who also have no bunk. *Id*. On one occasion, CR11 slipped in a dark shower stall without lighting on contaminated water and sustained a concussion in the fall. *Id*. Seven days passed before CR11 received any medical treatment for this fall and concussion. *Id*.

CR12 suffers from severe depression. *Id*. at 10, ¶ 28. CR12's condition has been compounded at ASGDC. *Id*. CR12 has been repeatedly robbed, stabbed, and threatened with increased violence if he reported the assaults. *Id*. Officers are generally scarce and, when they are present, CR12 has observed them releasing detainees from their cells to attack and rob other detainees. *Id*.

CR14 has been diagnosed with psychosis, for which he is not receiving effective medications. *Id*. at 10, ¶ 30. CR14's requests to change medications have been unheeded. *Id*. CR14 was sexually assaulted in the mental health unit, but officials have not investigated or responded to his report of the incident. *Id*.

CR15 has been diagnosed with major depression. *Id*. at 10, ¶ 31. CR15's living conditions have been deplorable, he has been beaten and robbed, his finger has been broken, and he has been denied attempts to secure a safe haven through protective custody. *Id*. CR15 has no medical treatment that begins to meet his needs. *Id*.

### *Claims Asserted*

Plaintiffs assert five causes of action. For a first cause of action, Plaintiffs seek a declaratory judgment that Defendant has violated Plaintiffs' substantive due process rights under the Fourth and Fourteenth Amendments. *Id*. at 27–28, ¶¶ 111–115. For a second cause of action, Plaintiffs seek a declaratory judgment that Defendant has violated Plaintiffs' rights under the Eighth and Fourteenth Amendments. *Id*. at 28–30, ¶¶ 116–122. For a third cause of action, Plaintiffs seek a declaratory judgment that Defendant has violated the ADA by failing to provide the minimal care necessary to meet SMI Detainees' mental health needs and by discriminating against them. *Id*. at 30–31, ¶¶ 123–130. For a fourth cause of action, Plaintiffs seek preliminary and permanent injunctive relief under 42 U.S.C. § 1983 to enjoin Defendant "from operating ASGDC in such a way as to deprive SMI Detainees of their constitutional and statutory rights and privileges." *Id*. at 31, ¶¶ 131–137. For a fifth cause of action, Plaintiffs seek attorneys' and experts' fees under 42 U.S.C. § 1988(b) & (c). *Id*. at 31–32, ¶¶ 138–139.

### *Relief Requested*

For relief, Plaintiffs seek a declaratory judgment from the Court declaring that the conditions of confinement at ASGDC and the policies, patterns, practices, acts, and omissions of Defendant

    a.   constitute punishment and subject the Named Plaintiffs and SMI Detainees to denial of substantive and procedural due process, in violation of their constitutional rights under the Fourteenth Amendments to the United States Constitution;

    b.   are the result of Defendant's deliberate indifference to a substantial risk of serious harm to the Named Plaintiffs and SMI Detainees in violation of the Eighth and Fourteenth Amendments to the United States Constitution;

    c.   deprive Named Plaintiffs and the Plaintiff Class SMI Detainees of their rights under the ADA.

*Id*. at 32.  Plaintiffs further ask the Court to issue injunctions restraining and prohibiting Defendant from confining SMI Detainees unless and until Defendant complies with the following:

a. Immediately cease and desist from placing SMI Detainees in a cell, pod, or other confined space that does not have an operable toilet, an operable sink, adequate light, and a designated bed and mattress, other than under the following circumstances: a detainee is held temporarily before or after being transported or relocated; a detainee is confined in a shower stall solely for the purpose of taking a shower; and in a case of emergency documented by a supervising officer.

b. Immediately cease and desist from confining SMI Detainees in any housing unit that does not have an officer physically present in the unit on a 24/7 basis.

c. Immediately cease and desist from failing to provide generally recognized and suggested mental health treatment to SMI Detainees, including without limitations, individual and in secure confidential group therapeutic services settings and necessary higher level of care for more seriously ill SMI Detainees who may not need hospitalization or for when hospitalization is not available.

d. Immediately cease and desist from confining SMI Detainees in cells and pods for over 16 hours a day when such Detainees are not being confined for disciplinary charges as administrative holds.

e. Immediately cease and desist from confining SMI Detainees in BMU, X-ray, and other restrictive housing as a result of a charge, conviction, and sentence for a rules infraction of consistent with ASGDC policies or administrative hold without due process of law and without first obtaining a determination by a qualified mental health provider ("QMHP") that the SMI Detainees that placement in such restrictive housing will not present a substantial risk that the detainee's mental health will be adversely affected.

f. Immediately cease and desist from confining SMI Detainees in BMU, X-ray, and other restrictive housing without providing at least ten hours of out-of-cell and out-of-pod structured therapeutic activities per week, and at least ten hours of out-of-cell and out-of-pod unstructured activities per week.

g. Immediately cease and desist from permitting inmates to participate in the handling and distribution of food and water to SMI Detainees without close supervision by detention officers.

h. Immediately recognize Defendant to engage in staff recruitment practices consistent with industry standards to reduce the number of detention officers with gang affiliations and other inappropriate relations with detainees.

i. Immediately cease and desist from employing restraint chairs, tasers and taser gloves, chemical sprays, and other rises of force in a manner contrary to generally recognized and accepted correctional practices, to manufacturers' instructions, and to Defendant's own policies, all of which pose a substantial risk of serious harm. . . .

j. Allow each SMI Detainee, except those temporarily placed in segregation for safety or disciplinary reasons, a minimum of one (1) hour per day of outdoor recreation and a minimum of three (3) showers per week.

*Id*. at 33–35. Plaintiffs also ask the Court to (1) enjoin Defendant from accepting and booking detainees into ASGDC from jurisdictions other than Richland County until such time as ASGDC is adequately and safely staffed; (2) order Defendant to develop and implement a comprehensive plan for the correction of the unlawful policies, practices, acts, and omissions complained of herein and to submit this plan to the Court and to the attorneys for Plaintiffs for review, with this plan addressing, without limitation, the following: medical and mental health staffing and services; prolonged use of restrictive housing; security staff recruitment, training, and supervision; use of force; detainee classification system; and sanitation and hygiene; (3) appoint a monitor to oversee implementation of this injunctive relief; (4) retain jurisdiction over Defendant until such time as the Court is satisfied that Defendant's unlawful policies, practices, acts, and omissions complained of herein no longer exist; and (5) award Plaintiffs the costs of this lawsuit and their reasonable attorneys' fees, costs, and expert fees. *Id*. at 35–36.

## APPLICABLE LAW

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs bear the burden of showing by a preponderance of the evidence that class certification is appropriate under Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–351 (2011). To certify the class, Plaintiffs must demonstrate that the proposed class certification satisfies the prerequisites set forth within both Rule 23(a) and Rule 23(b). *See Anderson v. Lab'y Corp. of Am. Holdings*, C/A No. 1:17-cv-193, 2023 WL 1970953, at *7 (M.D.N.C. Feb. 13, 2023) ("[C]ertification requires two showings: first, that the four 'prerequisites' of Rule 23(a) are met; and second, that the case fits within at least one of the three 'types of actions' described in Rule 23(b). A failure on either front dooms the class." (citation omitted)).

### Rule 23(a) Requirements

First, Plaintiffs must establish that each of the following four requirements of Rule 23(a) is met: numerosity, commonality, typicality, and adequacy of representation.[3] The commonality, typicality, and adequacy requirements "tend to merge, with commonality and typicality serving as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 337 (4th Cir. 1998) (cleaned up).

---

[3] "In addition to the Rule 23 express requirements, the United States Court of Appeals for the Fourth Circuit has implicitly recognized a requirement that the class be ascertainable or readily identifiable." *Childress v. JPMorgan Chase & Co.*, C/A No. 5:16-cv-298-BO, 2019 WL 2865848, at *5 (E.D.N.C. July 2, 2019); *see also Chado v. Nat'l Auto Inspections, LLC*, C/A No. JKB-17-cv-2945, 2019 WL 1981042, at *4 (D. Md. May 3, 2019) ("Rule 23 contains an implicit threshold requirement that the members of a proposed class be readily identifiable, a requirement that is characterized . . . as an ascertainability requirement." (cleaned up)). Plaintiffs argue that the ascertainability requirement is not applicable to this case because they seek certification only under Rule 23(b)(2). The Court addresses that argument below.

### (1) *Numerosity*

Rule 23(a)(1) requires that a putative class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "There is no mechanical test for determining whether in a particular case the requirement of numerosity has been satisfied. The issue is one . . . to be resolved in the light of the facts and circumstances of the particular case." *Kelley v. Norfolk & W. Ry. Co.*, 584 F.2d 34, 35 (4th Cir. 1978). Although there is no specific rule as to how many members a class must have, the Fourth Circuit has instructed that "a small number of potential class members [is] insufficient to maintain a class action." *Williams v. Henderson*, 129 F. App'x 806, 811 (4th Cir. 2005) (finding the district court did not abuse its discretion in denying class certification when the plaintiff identified only eight individuals in the proposed class, which was insufficient to satisfy the numerosity requirement).

### (2) *Commonality*

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A contention is sufficiently common where "it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. Commonality is satisfied if only one legal or factual issue is shared by all class members. *Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 212 (E.D. Va. 2003). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (emphasis in original). Even a single common question is sufficient to meet this requirement. *Id.* at 359.

### (3) *Typicality*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test for determining typicality is whether the claim or defense arises from the same course of conduct leading to the class claims, and whether the same legal theory underlies the claims or defenses." *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 498 (D. Md. 1998). "The question of typicality focuses on the similarity of the legal and remedial theories of claims of the named and unnamed plaintiffs." *Bates v. Tenco Servs., Inc.*, 132 F.R.D. 160, 163, *order amended by* 132 F.R.D. 165 (D.S.C. 1990). For typicality to be satisfied, the "representative party's interest in prosecuting his own case must simultaneously tend to advance the interests of the absent class members." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). Where "the claims of the representative parties are the same as the claims of the class, the typicality requirement is satisfied." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 339 (4th Cir. 2006).

### (4) *Adequacy of Representation*

Rule 23(a)(4) requires the class representative to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Determining adequacy of representation, therefore, requires the Court to determine: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the entire class." *Parker v. Asbestos Processing, LLC*, C/A No. 0:11-cv-01800-JFA, 2015 WL 127930, at *8 (D.S.C. Jan. 8, 2015) (citations omitted). This inquiry "tend[s] to merge" with the commonality and typicality criteria. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). In part, these requirements

determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.*

**Rule 23(b)(2) Requirements**[4]

Plaintiffs seek class certification under Rule 23(b)(2), which is appropriate where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Supreme Court of the United States has explained as follows:

> The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared only as to all of the class members or as to none of them.

*Dukes*, 564 U.S. at 360 (citation and quotation marks omitted). "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. . . . Rule 23(b)(2) classes are required to have a particular cohesion and, because the rule authorizes class certification only in situations affecting the class as a whole and calling for either the same injunctive or declaratory relief as to the class, 'unitary adjudication is not only preferable, but it is also essential.' Rule 23(b)(2) class certification is considered to be most useful in civil rights and constitutional cases, particularly those in which an individual plaintiff may change status during the pendency of the action (at trial or on appeal) in which case the case could become moot and thus risk dismissal." *Fraser v. Bureau of Alcohol*, C/A No. 3:22-cv-410, 2023 WL 5616011, at *4 (E.D. Va. Aug. 30, 2023) (citations omitted); *see Cheng v. Liu*, No. 23-1806, 2024 WL 3579606, at *3 (4th Cir. July 29, 2024).

---

[4] Because Plaintiffs move for class certification only under Rule 23(b)(2), the Court does not address whether class certification would be proper under Rules 23(b)(1) or 23(b)(3).

## DISCUSSION

Before addressing the Rule 23 requirements outlined above, the Court considers certain preliminary issues and arguments the parties present.[5]

**Timeliness of the Motion**

***The Parties' Positions***

Defendant argues that Plaintiffs' Motion for Class Certification is untimely under Rule 23(c)(1)(A).[6]  ECF No. 139 at 5.  Defendant notes that Plaintiffs did not file their Motion until more than two years after commencing this action and filing the First Amended Complaint, which asserted class claims.  *Id*.  Defendant also notes Plaintiffs waited until the discovery phase of litigation was 25 days from ending.  *Id*.  Defendant contends that Plaintiffs' delay in filing the Motion was a deliberate effort to preclude Defendant from having a fair opportunity to conduct class-based discovery.  *Id*. at 6.  Defendant cites several cases (all district court cases outside the

---

[5] The Court does not address, at this time, Defendant's argument that DRSC lacks standing, as the parties agreed at the hearing on the Motion for Class Certification that the standing issue has no bearing on the merits of class certification.  DRSC's standing will be addressed as part of the Court's consideration of the parties' cross Motions for Summary Judgment.

[6] As a companion argument to the timeliness issue, Defendant contends that Plaintiffs waived certain arguments by not addressing them in their initial Memorandum in support of the Motion and should not be permitted to address those arguments in the Reply.  For example, Defendant argues Plaintiffs did not address the issue of the timeliness of the Motion.  *See* ECF No. 139 at 5–7.  Likewise, Defendant argues Plaintiffs failed to meet their burden of satisfying certain elements under Rule 23(a) and should be precluded from providing additional support on reply.  *Id*. at 14, n. 5.  Defendant's argument lacks merit.  Plaintiffs addressed each of the requirements under Rule 23 in their Motion and have not waived the ability to provide additional argument as to the required elements that the Court must consider.  There is no basis to find that Plaintiffs have waived the ability to respond to Defendant's arguments.

15

Fourth Circuit), purportedly denying class certification on the basis that the motions for class certification were not timely made as required by Rule 23(c)(1)(A).[7] *Id*. at 6–7.

Plaintiffs argue that they are not required to affirmatively prove timeliness in the Motion. ECF No. 143 at 1. Plaintiffs note the cases on which Defendant relies are "out of circuit cases, most of which analyze timeliness challenges based on local rules that do not apply in this district" and are therefore inapplicable. *Id*. at 1–2. Further, Plaintiffs contend the Motion is timely and that Rule 23 does not provide a specific deadline for when class certification must be determined. *Id*. Plaintiffs explain that they have vigorously engaged in discovery on class issues and that Defendant has failed to produce discovery responses on certain key issues, hampering Plaintiffs' ability to pursue class certification at an earlier time. *Id*. at 3. As to whether discovery would need to be reopened for class-based evidence, Plaintiffs contend that Defendant's argument is without merit "because the pleadings expressly pray for class relief, because all parties have proceeded with discovery directed at the class issue, and because there is no other prejudice to Defendant." *Id*. at 4. Plaintiffs contend the parties have approached this case as a class action since the

---

[7] Defendant's cited cases are as follows: *Walker v. Columbia Univ.*, 62 F.R.D. 63, 64 (S.D.N.Y. 1973) (finding the plaintiffs failed to timely file a motion for class certification in accordance with S.D.N.Y Local Rule 11A(c)); *Williams v. S. Bell Tel. & Tel. Co.*, C/A No. 77-cv-1895-WMH, 1978 WL 73, at *2 (S.D. Fla. Apr. 4, 1978) (finding the plaintiffs failed to timely file a motion for class certification in accordance with S.D. Fla. Local Rule 19A3); *Jones v. Hartford Ins. Co. of the Midwest*, 243 F.R.D. 694 (N.D. Fla. 2006) (finding the plaintiffs failed to timely file a motion for class certification in accordance with N.D. Fla. Local Rule 23.1(B)); *Schaevitz v. Braman Hyundai, Inc.*, C/A No. 1:17-cv-23890-KMM, 2019 WL 3890219, at *2 n.1 (S.D. Fla. 2019) (finding the plaintiffs failed to timely file a motion for class certification, citing N.D. Fla. Local Rule 23.1); *Fitzhenry v. ADT Corp.*, C/A No. 14-cv-80180, 2014 WL 6663379, at *5 (S.D. Fla. 2014) (finding the plaintiffs failed to timely file a motion for class certification); *Porter v. Collecto, Inc.*, C/A No. 14:-cv-21270, 2015 WL 6777601, at *2 (S.D. Fla. Nov. 2, 2015) (finding the plaintiffs failed to timely file a motion for class certification, citing N.D. Fla. Local Rule 23.1); *Velasquez v. Dig. Page, Inc.*, 303 F.R.D. 435, 445 (E.D.N.Y. 2014) (noting that, although the motion for class certification appeared to be untimely, "there is no need to address the merits of Defendants' timeliness argument" because the plaintiffs failed to satisfy the other Rule 23 requirements). *See* ECF No. 139 at 6.

Amended Complaint was filed in June 2022. *Id*. Finally, Plaintiffs note the parties have agreed to continue with certain parts of discovery past the deadline in the operative Scheduling Order, and reopening discovery is therefore unnecessary. *Id*.

### *Analysis*

Rule 23(c)(1)(A) requires that at "an early practicable time after a person sues . . . as a class representative," the court must determine whether to certify the action as a class. Fed. R. Civ. P. 23(c)(1)(A). "Though a district court should certify the class at 'an early practicable time,' . . . the court has considerable discretion in the management of a proposed class action and the timing of class certification." *Rhodes v. E.I. Du Pont De Nemours & Co.*, C/A No. 6:06-cv-00530, 2009 WL 10705645, at *3 (S.D.W. Va. June 30, 2009). Generally, the late timing of a motion to certify a class should not alone justify a court's refusal to consider the plaintiff's motion for class certification. *See United Broth. of Carpenters and Joiners of Am., Local 899 et al. v. Phoenix Assocs., Inc. et al.*, 152 F.R.D. 518, 521 (S.D. W. Va. 1994). A plaintiff's delay in filing a class certification motion should be "evaluated in light of the circumstances of the case and certification will be denied only when the late timing of the determination may cause prejudice or unduly complicate the case." Wright, Miller, & Kane, *Federal Practice and Procedure: Civil 3d* § 1785.3 at 452 (2005).

Courts within the Fourth Circuit have noted that "[t]he Fourth Circuit has strongly disapproved of lackadaisical pursuit of class certification[] and has denied certification in cases of egregious delay." *Curtis v. Norfolk S. Ry. Co.*, 206 F.R.D. 548, 549 (M.D.N.C. 2002). *Curtis*, however, is distinguishable because the timeliness challenge was based on the Local Rules of the Middle District of North Carolina requiring motions for class certification to be filed within 90 days of the commencement of the action. *Id*. The Local Rules for the District of South Carolina

contain no such requirement.  All of the cases Defendant cites (*see supra* footnote 7) are from other district courts, and most of those cases were decided based on local rules from those district courts governing the timing of a motion for class certification.  *See, e.g.*, *Williams*, 1978 WL 73, at *2 ("Numerous other courts have also held that when a plaintiff has failed to move for class certification in a timely manner, *i.e. in compliance with a local rule governing such matters or a court order*, such a plaintiff has failed to satisfy the mandate of Rule 23(a)(4) of fairly and adequately representing the interests of the putative class." (emphasis added)).  The District of South Carolina does not have any such rule. Also, the parties did not seek a separate deadline for class certification motions in the Court's scheduling orders and none of those orders contained such a deadline, separate from the deadline for "all other motions."[8]  ECF Nos. 11, 20, 56, 81, 149. Defendant's cited cases are therefore inapplicable.

Further, objections to the timeliness of class certification motions are not well-founded where "the complaint expressly prayed for class relief, [where] all parties have proceeded with discovery directed at the class issue, and [where] no prejudice has been shown by the defendants." *Byrd v. Int'l Bhd. of Elec. Workers, Loc. 24*, C/A No. 72-cv-848-M, 1977 WL 875, at *6 (D. Md. June 21, 1977).  Indeed, district courts within the Fourth Circuit have recognized that "there is nothing explicit in Rule 23 that requires a determination on class certification prior to decisions on other motions" and that the court often "may need to probe behind the pleadings before coming to rest on the certification question."  *White v. Bank of Am., N.A.*, C/A No. CCB-10-cv-1183, 2012 WL 1067657, at *4 (D. Md. Mar. 27, 2012) (citation and internal quotation marks omitted).

---

[8] The Plaintiff's Motion for Class Certification was filed on September 5, 2024.  ECF No. 124.  At the time, the operative scheduling order set the deadline for "all other motions" as November 5, 2024.  ECF. No. 81 ¶ 6.  The "all other motions" deadline was later extended until January 15, 2025.  ECF No. 149 ¶ 6.  The motion was filed within the time provided within the Court's scheduling orders.

Based on the foregoing, the Court finds Plaintiffs' Motion for Class Certification was timely filed. The cases Defendant cites are inapposite as they are based on local rules regarding class certification motions in other courts that do not govern the timeliness of motions filed in this Court. Further, Defendant has not shown that it has been prejudiced by the timing of Plaintiffs' Motion. *See Buchanan v. Consol. Stores Corp.*, 217 F.R.D. 178, 185 (D. Md. 2003) (finding a motion for class certification filed three years after commencement of the action and at the close of discovery was not untimely because, among other reasons, the defendants were aware of the class claims). The parties have conducted lengthy, in-depth discovery in this matter, and Plaintiffs alleged class claims in the pleadings at the earliest stages of this action. Thus, Defendant was on notice of the class claims and could have pursued discovery related to all class issues, to the extent such discovery was needed.

**Ascertainability**

In the Memorandum in Support of the Motion for Class Certification, Plaintiffs argued that the "members of the Proposed Class are readily ascertainable." ECF No. 124-1 at 5. At the hearing held on January 7, 2025, Plaintiffs argued, for the first time,[9] that the Court need not consider ascertainability as it is not applicable to a class sought to be certified under Rule 23(b)(2), citing *Kadel v. Folwell*, 100 F.4th 122 (4th Cir. 2024). Following the hearing, the parties submitted additional briefing as to whether, in light of *Kadel*, Plaintiffs must demonstrate that the members of the proposed class are readily ascertainable.

---

[9] At the hearing, Plaintiffs' counsel explained they had discovered the *Kadel* case the night before the hearing. The Court finds that Plaintiffs have not waived the argument that ascertainability is not required in this case by waiting until the hearing to raise the issue because whether the class must be ascertainable is an essential element of the law applicable to the Court's evaluation of the certification analysis.

*Applicable Law*

It has been recognized within the Fourth Circuit that "Rule 23 contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable.'" *Peters v. Aetna Inc.*, 2 F.4th 199, 241–42 (4th Cir. 2021) (quoting *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014)). "Under this principle, sometimes called 'ascertainability,' '[a] class cannot be certified unless a court can readily identify the class members in reference to objective criteria.'" *Id.* (quoting *EQT*, 764 F.3d at 358). While a plaintiff "need not be able to identify every class member at the time of certification," certification is inappropriate "[i]f class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials.'" *Id.* (quoting *EQT*, 764 F.3d at 358). A plaintiff must "ensure that there will be some 'administratively feasible [way] for the court to determine whether a particular individual is a member' at some point." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 658 (4th Cir. 2019) (quoting *EQT*, 764 F.3d at 358) (alteration in original). "The ascertainability requirement is a judicially-imposed gloss on Federal Rule of Civil Procedure 23 that has been 'repeatedly recognized' by the Fourth Circuit and which requires that 'the members of a proposed class [must] be 'readily identifiable.'" *In re Blackbaud, Inc., Customer Data Breach Litig.*, C/A No. 3:20-MN-02972-JFA, 2024 WL 2155221, at *3 (D.S.C. May 14, 2024).

However, in *Kadel*, the Fourth Circuit explained:

> This Circuit, and many others, have recognized an implicit requirement in 23(b)(1) and 23(b)(3) cases that members of a proposed class be "readily identifiable." This makes sense when issues of notice and damages are at play, *i.e.*, for 23(b)(1) and (23)(b)(3) classes. But courts of appeals have consistently declined to impose an ascertainability requirement in 23(b)(2) cases requesting that a party be enjoined from certain actions.
>
> These holdings are supported by the Advisory Committee Notes to Rule 23(b)(2), which state that "illustrative" examples of a Rule

> 23(b)(2) class "are various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, *usually one whose members are incapable of specific enumeration.*" Fed. R. Civ. P. 23 advisory committee's note (1966) (emphasis added).  There is no threshold ascertainability requirement in this Rule 23(b)(2) case, which seeks only declaratory and injunctive relief from a discriminatory policy.  The district court did not abuse its discretion in certifying the class.

*Kadel*, 100 F.4th at 160–61 (citations omitted).

As noted, the parties were directed to brief the Court on the implications of *Kadel* on Rule 23's ascertainability requirement as applied to this case.  *See* ECF No. 171.  Defendant argues that *Kadel* "does not appear to state a 'black letter' rule having no exceptions to the effect that the 'threshold ascertainability requirement' is *never* applicable to a Rule 23(b)(2) class" and that the explicit language of *Kadel* appeared to limit the holding to that particular case.  ECF No. 180 at 2–3.  Defendant "urges the Court to recognize the distinct differences between the type of case or controversy in *Kadel* vis-à-vis the present case" in that: (1) *Kadel* involved a facial challenge as opposed to an as-applied challenge like the present case, (2) *Kadel* involved a discriminatory policy while the present case involves "no allegations of discrimination" and instead focuses on the constitutional adequacy of the mental health program and conditions of confinement applicable to SMI Detainees,[10] and (3) the present case presents "a need for the Court to know the class membership for purposes of establishing the preclusive effect of any such rulings" as to declaratory and injunctive relief.  *Id*. at 3–4.  Defendant contends that the Fourth Circuit's decision in *EQT* continues to be the controlling authority on the issue of ascertainability.  *Id*. at 2.

---

[10] Contrary to Defendant's assertion, Plaintiffs have alleged a claim for discrimination under Title II of the ADA as discussed below.

Plaintiffs argue that *EQT* is distinguishable because it involved class claims under Rule 23(b)(3) seeking individual claims for damages. ECF No. 181 at 2. According to Plaintiffs, *Kadel* "confirmed the limited scope of *EQT*" to class claims arising under Rules 23(b)(1) and 23(b)(3) in which issues of notice and damages are at play. *Id.* Plaintiffs note that the Fourth Circuit, in deciding *Kadel*, cited four court of appeals' decisions[11] in support of its ruling and that the Tenth Circuit's decision in *Shook v. El Paso Co.*, 386 F.3d 963 (10th Cir. 2024) is directly on point with the present case. *Id.* at 2–3.

The Court finds *Kadel* teaches that the "ascertainability" requirement is not applicable to a case, such as this one, asserting only claims for declaratory and injunctive relief under Rule 23(b)(2). Even before *Kadel*, district courts within the Fourth Circuit recognized "the ascertainability requirement is not as significant in a Rule 23(b)(2) class as in class actions in which class notice is required so that putative members can opt-out." *Fraser*, 2023 WL 5616011, at *7 ("Rule 23(b)(2) does not afford members the right to opt-out so notice of such a right is not required in a class action certified under Rule 23(b)(2)."). The Fourth Circuit affirmed this rational in *Kadel*, explaining that the ascertainability requirement "makes sense when issues of notice and damages are at play, i.e., for 23(b)(1) and 23(b)(3) classes," but agreed with the other circuit courts that have declined to impose the ascertainability requirement for injunctive relief classes under Rule 23(b)(2). 100 F.4th at 160.

A brief survey of those other circuit court cases is instructive. The Third Circuit explained as follows:

---

[11] Those four cases are: (1) *Yaffe v. Powers*, 454 F.2d 1362 (1st Cir. 1972), *abrogated on other grounds by Gardner v. Westinghouse Broad. Co.*, 437 U.S. 478 (1978); (2) *Shelton v. Bledsoe*, 775 F.3d 554 (3d Cir. 2015); (3) *Cole v. City of Memphis*, 839 F.3d 530 (6th Cir. 2016); and (4) *Shook v. El Paso Cnty.*, 386 F.3d 963 (10th Cir. 2004). *See Kadel,* 100 F.4th at 160–61.

"The key to the (b)(2) class is the 'indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful *only* as to all of the class members or as to none of them.'"  Because there is no right to opt out from such a class, and because significant individual issues in a (b)(2) class might present manageability issues and undermine the value of utilizing the class action mechanism, we have instructed that such classes must be cohesive.  However, this requirement comes from Rule 23(b)(2) itself, not from any general requirement of ascertainability.  Because the focus in a (b)(2) class is more heavily placed on the nature of the remedy sought, and because a remedy obtained by one member will naturally affect the others, the identities of individual class members are less critical in a (b)(2) action than in a (b)(3) action. . . .  Moreover, the enforcement of the remedy usually does not require individual identification of class members in (b)(2) class actions: "If relief is granted . . . the defendants are legally obligated to comply, and it is usually unnecessary to define with precision the persons entitled to enforce compliance, since presumably at least the representative plaintiffs would be available to seek . . . relief if necessary."

*Shelton*, 775 F.3d at 561 (citations omitted).  The Tenth Circuit's explanation is particularly germane to the present case:

[W]hile the lack of identifiability is a factor that may defeat Rule 23(b)(3) class certification, such is not the case with respect to class certification under Rule 23(b)(2).  In fact, many courts have found *Rule 23(b)(2) well suited for cases where the composition of a class is not readily ascertainable*; for instance, in a case where the plaintiffs attempt to bring suit on behalf of a *shifting prison population*.

*Shook*, 386 F.3d at 972 (emphasis added) (citation omitted).  The Tenth Circuit further noted that, unlike class certification for claims seeking money damages, Rule 23(b)(2) claims for injunctive relief focus on "whether the class is amenable to uniform group remedies."  *Id.* at 973.  The First Circuit provided the following explanation:

Although notice to and therefore precise definition of the members of the suggested class are important to certification of a [Rule 23(b)(3)] class, notice to the members of a [Rule 23(b)(2)] class is not required and the actual membership of the class need not therefore be precisely delimited.  In fact, *the conduct complained of*

> *is the benchmark* for determining whether a subdivision [Rule 23(b)(2)] class exists, making it uniquely suited to civil rights actions in which the members of the class are often "incapable of specific enumeration."

*Yaffe*, 454 F.2d at 1366 (emphasis added) (explaining that "[i]n holding that a class should not be certified because its members had not been sufficiently identified, for example, the court applied standards applicable to a subdivision (b)(3) class rather than to a subdivision (b)(2) class"). The Sixth Circuit, after analyzing the decisions in *Shelton*, *Shook*, and *Yaffe*, reasoned as follows:

> Rule 23(b)(2) and 23(b)(3) "create two remarkably different litigation devices." . . . In the Rule 23(b)(3) context, ascertainability aids the inherent efficiencies of the class device by ensuring administrative feasibility, and as we read our own precedent and the precedent of other courts, ascertainability is a requirement tied almost exclusively to the practical need to notify absent class members and to allow those members a chance to opt-out and avoid the potential collateral estoppel effects of a final judgment. But "the requirement that the class be defined in a manner that allows ready identification of class members serves several important objectives that either do not exist or are not compelling in (b)(2) classes." Since notice is not required for a (b)(2) class, the practical efficiencies that come with knowing the precise membership of the class are nonexistent. Likewise, without notice and an opportunity to opt-out, absent (b)(2) class members would not be estopped by a final judgment for the defense.
>
> As discussed above, administering a (b)(3) class is a more procedurally complicated task than overseeing a (b)(2) class. The main the purpose of a (b)(2) class is to provide relief through a *single* injunction or declaratory judgment. "Because the focus in a (b)(2) class is more heavily placed on the nature of the remedy sought, and because a remedy obtained by one member will naturally affect the others, the identities of individual class members are less critical in a (b)(2) action than in a (b)(3) action."

*Cole*, 839 F.3d at 541–42 (citations omitted). As applied to the issues before the court in that case, the Sixth Circuit explained:

> Here, the plaintiffs seek a single remedy: an injunction prohibiting the City from reenacting the Beale Street Sweep. As the district court observed, this injunction provides the sole remedy necessary

> to protect the affected class. The precise identity of each class member need not be ascertained here, particularly given that notice is not required as it would be in a (b)(3) class. The decisions of other federal courts and the purpose of Rule 23(b)(2) persuade us that ascertainability is not an additional requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief.

*Id*. at 542.

As to Defendant's argument that this case presents three key differences from the claims in *Kadel*, the Court notes as follows. First, Defendant presents no support, and the Court can find none, that the Fourth Circuit premised its reasoning in *Kadel* on the basis that the plaintiffs' claims in that case involved a facial challenge rather than an as-applied challenge. Instead, the holdings in *Kadel*, *Shelton*, *Shook*, *Yaffe*, and *Cole* are all based on the type of relief sought—i.e., injunctive and declaratory relief under Rule 23(b)(2)—not the type of challenge lodged by the plaintiffs. Second, Defendant's contention that *Kadel* involved a discriminatory policy while the present case involves "no allegations of discrimination" is incorrect as Plaintiffs have alleged a claim for discrimination under Title II of the ADA. Regardless, Plaintiffs' discrimination claim is immaterial as to whether the ascertainability requirement is applicable because the Court looks to the relief sought and not the claims alleged. Defendant's contention that this case is distinguishable from *Kadel* because it focuses on the constitutional adequacy of the mental health program and conditions of confinement applicable to SMI Detainees also holds no water because some of the circuit court cases relied upon in *Kadel* involved those very types of claims. For example, *Shook* involved an attempt by pretrial detainees to certify a class of persons with serious mental health needs to challenge their lack of access to mental health care during their incarceration. 386 F.3d at 965–66. The similarities between the present case and *Shook* cannot be overstated. As to Defendant's third assertion—that this case presents "a need for the Court to know the class membership for purposes of establishing the preclusive effect of any such rulings" as to

declaratory and injunctive relief—the Court finds that, even without considering whether the class is ascertainable, Rule 23 provides an appropriate measuring stick from which the Court can evaluate the proposed class definition.

Based on *Kadel* and the cases upon which it relies, the undersigned finds that the ascertainability requirement is not applicable to the present case, which seeks only injunctive and declaratory relief under Rule 23(b)(2). Instead, the Court looks to whether the proposed class is comprised of members who suffered similar harm by the same conduct of Defendant and whether the same relief is available to all members on a class-wide basis.

**The Class Definition**

Although ascertainability is not required under Rule 23(b)(2), Plaintiffs must nevertheless properly define the class.[12] *Doe v. Lally*, 467 F. Supp. 1339, 1343 (D. Md. 1979) ("When a court decides to certify an action as a class action, it must be able to distinguish or define membership

---

[12] If Plaintiffs cannot present an identifiable class, the Court is unable to determine whether the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation are met. The district court in *Shook*, after the case was remanded by the Tenth Circuit in the opinion discussed above, explained as follows:

> Although not specifically mentioned in Rule 23, a prerequisite of a class action is that there must be a class. 7A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice & Procedure* § 1760 (3d ed. 2005). While it is true that notice to members of a Rule 23(b)(2) class is not required, every Rule 23 class must have a defined boundary. Certification of a nebulous class would result in numerous procedural problems. Compliance with class-wide injunctive relief would be impossible to monitor, if it would even be possible to enter an order meeting the requirements of Rule 65(d). In addition, certification of a vaguely defined class would lead to uncertainty about the preclusive effect of the action.

*Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso*, C/A No. 02-cv-00651-RPM, 2006 WL 1801379, at *7 (D. Colo. June 28, 2006), *aff'd by* 543 F.3d 597 (10th Cir. 2008).

of the class at the outset."). Under Rule 23(c)(1)(B), "[a]n order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B). "[C]lass definitions must be written with specificity," and a district court must not "craft[] overly general class definitions that run afoul of Rule 23's core tenets." *Stafford v. Bojangles' Rests., Inc*, 123 F.4th 671, 680 (4th Cir. 2024).[13] Although a Rule 23(b)(2) class need not be "ascertainable," it still must be "capable of the type of description demanded by Rule 23(c)(1)(B)." *Shelton*, 775 F.3d at 563. In other words, the Court must determine whether there is a class at all and is one that is capable of a remedy under Rule 23(b)(2). *See Christman v. Am. Cyanamid Co.*, 92 F.R.D. 441, 446 (N.D.W. Va. 1981) ("There must be a class. To this end, the Plaintiffs must provide an intelligible description of a cohesive class."). Cohesiveness is particularly critical in assessing whether a class is entitled to mandatory injunctive relief because "if the proposed class includes members who are not at risk of injury based on the [Defendant's conduct,] then injunctive relief sought on behalf of the class as a whole under Rule 23(b)(2) would be inappropriate." *Greater Chautauqua Fed. Credit Union v. Quattrone*, C/A No. 1:22-cv-2753-MKV, 2025 WL 869729, at *12 (S.D.N.Y. Mar. 20, 2025).

Although the Fourth Circuit, in *Kadel*, did not expressly discuss what is the appropriate measuring stick for assessing a class definition, the cases the Court relied upon do. The Third Circuit explained that classes under Rule 23(b)(2) "must be cohesive." *Shelton*, 775 F.3d at 561 (noting that its conclusion that ascertainability is not a requirement for certification under Rule

---

[13] The plaintiff in *Stafford* sought certification of a class under Rule 23(b)(3), which requires a finding that common questions "predominate over" any individualized questions. *Stafford*, 123 F.4th at 678–79. Nevertheless, the Fourth Circuit's decision in *Stafford* as to the requirements for a clearly defined class under Rule 23(c)(1)(B) are instructive in the present case to define a class under Rule 23(b)(2).

27

23(b)(2) "does not suggest that we are jettisoning the basic requirement that 'there must be a "class"' in a class action"). The Third Circuit instructed that

> for certification of a 23(b)(2) class seeking only declaratory or injunctive relief, a properly defined "class" is one that: (1) meets the requirements of Rule 23(a); (2) is sufficiently cohesive under Rule 23(b)(2) and our guidance in [*Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998)]; and (3) is capable of the type of description by a "readily discernible, clear, and precise statement of the parameters defining the class," as required by Rule 23(c)(1)(B) and our discussion in [*Wachtel ex rel. Jesse v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 187 (3d Cir. 2006)].

*Id*. at 563. The Third Circuit noted that some courts also look to "a manageability requirement in applying Rule 23(b)(2)." *Id*. at 972 (noting, however, that "[t]he circuits do not speak with one voice on whether courts may look to manageability considerations in evaluating Rule 23(b)(2) class certification"). As to manageability, the Fourth Circuit has explained that "in exercising the 'broad discretion' to decide whether to allow a suit to proceed as a class action, some courts have ruled it is appropriate to take account of considerations not expressly addressed in Rule 23, including manageability in Rule 23(b)(2) cases," and that, because "efficiency is one of the primary purposes of class action procedure, . . . in appropriate circumstances a district court may exercise its discretion to deny certification if the resulting class action would be unmanageable or cumbersome." *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 757, 759 n.5 (4th Cir. 1998) (citations and quotations omitted); *Shook*, 386 F.3d at 973 ("While Rule (b)(2) classes for injunctive relief are usually easier to manage than damages class actions, courts also need to look to whether the class is amenable to uniform group remedies.").

### *Cohesiveness*

A cohesiveness requirement applies to Rule 23(b)(2) cases. "To succeed on their motion for class certification under Rule 23(b)(2), [P]laintiffs must demonstrate that the proposed class

meets the rule's cohesiveness requirement." *Rhodes v. E.I. du Pont de Nemours & Co.*, 253 F.R.D. 365, 374 (S.D.W. Va. 2008) (citing *Barnes*, 161 F.3d at 143). "[U]nder Rule 23(b)(2) the class members' injuries must be sufficiently similar that they can be addressed in a single injunction that need not differentiate between class members." *Williams v. Jones*, C/A No. 9:14-cv-00787-RMG-BM, 2014 WL 2155251, at *9 (D.S.C. May 22, 2014). The "cohesiveness" requirement originally arose in the Rule 23(b)(3) context and stems from the Supreme Court's statement that "[t]he Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc,* 521 U.S. at 623; *see also Rhodes v. E.I. du Pont de Nemours & Co.*, C/A No. 6:06-cv-00530, 2008 WL 2400944, at *4 (S.D.W. Va. June 11, 2008) (noting cohesiveness is required under Rule 23(b)(2) because unnamed members are bound by the action without the opportunity to opt out). The cohesiveness requirement is similar to, but "more stringent" than, the commonality requirement of Rule 23(a). *See Lienhart v. Dryvit Syst., Inc.,* 255 F.3d 138, 147 n. 4 (4th Cir. 2001). The emphasis of the inquiry as to cohesiveness under Rule 23(b)(2) is on the nature of the relief sought. *Harris v. Rainey*, 299 F.R.D. 486, 497 (W.D. Va. 2014) ("Put simply, the entire class wins or the entire class loses. This is the very definition of a cohesive class.").

"[B]ecause of the group nature of the harm alleged and the broad character of the relief sought, the (b)(2) class is, by its very nature, assumed to be a homogenous and cohesive group with few conflicting interests among its members." *Berry v. Schulman*, 807 F.3d 600, 608–09 (4th Cir. 2015) (noting "a paradigmatic Rule 23(b)(2) case" is one where "meaningful, valuable injunctive relief" is "indivisible" and will benefit all members of the Rule (b)(2) class at once). The "cohesiveness" requirement in a Rule 23(b)(2) case provides the Court "with 'enough information to ascertain whose claims will be adjudicated by the class action' so that all class

members may be readily identified upon judgment." *Kennedy v. Sullivan*, 138 F.R.D. 484, 489

(N.D.W. Va. 1991) (quoting *Christman,* 92 F.R.D. at 446).

### *Proposed Class Definition*

In the Motion for Class Certification, Plaintiffs request certification of the following class:

> All individuals who (1) have been detained at ASGDC since April 28, 2022, or will be detained at ASGDC in the future; and (2) suffer from serious mental illness ("SMI").

ECF No. 124 at 1 (the "Proposed Class"). The Second Amended Complaint defines SMI Detainees

as follows:

1) Assigned to a "mental health" housing unit at ASGDC.

2) Diagnosed by a psychiatrist or other licensed clinical mental health professional with any of the following mental illnesses:

   a. Cognitive disorders (e.g., traumatic brain injuries; Cognitive Disorder Not Otherwise Specified);

   b. Schizophrenia (all subtypes);

   c. Schizoaffective Disorder (all subtypes);

   d. Paranoid Disorder (e.g., Delusional Disorders);

   e. Major Depressive Disorder (all subtypes);

   f. Bipolar Disorder (all subtypes);

   g. Other Psychotic or Mood Disorders (e.g., Schizophreniform, Dysthymia, Psychotic Disorder Not Otherwise Specified); or

3) Diagnosed by a psychiatrist or other licensed clinical mental health professional with another mental disorder, not listed above, that has resulted in significant functional impairment, defined as:

   a. the inability to attend and effectively perform the usual or necessary activities of daily living;

30

      b.  an extreme impairment of coping skills, rendering the patient exceptionally vulnerable to unintentional or intentional victimization and possible mismanagement; or

      c.  behaviors that are bizarre and/or dangerous to self or others.

   4)  Has been admitted to a licensed behavioral health or psychiatric hospital.

ECF No. 99 at 11–12, ¶ 33.

*The Parties' Positions*[14]

Plaintiffs contend the members of the Proposed Class are readily identifiable from the records of Defendant's medical provider, Advanced Correctional Healthcare, Inc. ("ACH"). ECF No. 124-1 at 5. According to Plaintiffs, SMI Detainees can be identified based on (1) a medical provider's diagnosis or (2) ACH's classification of the detainee as SMI.[15] *Id*. The critical inquiry, according to Plaintiffs, is the historical determinations made about the status of each detainee, which can be found in Defendant's records. *Id*.

Defendant contends that the Proposed Class definition in the Motion is "substantially different from the Proposed Class definition pled in the Second Amended Complaint" but that

---

[14] In their respective briefs, the parties have presented arguments as to whether Plaintiffs have satisfied the ascertainability requirement. Although ascertainability is not required, the parties' arguments as to ascertainability assist the Court's analysis on whether Plaintiffs have properly defined a class such that the Court can apply the requirements of Rule 23. The Court also considers the other arguments presented by the parties, unrelated to ascertainability, concerning the definition of the proposed class.

[15] Plaintiffs note that ACH classifies detainees with SMI as either MH-2a (detainees with serious mental illness based on diagnosed psychotic disorders, Major Depression, Bipolar disorder, Dementia, severe anxiety disorder, and severe PTSD characterized by significant functional impairment) or MH-2b (detainees with a primary personality disorder that is severe, accompanied by significant functional impairment, and subject to periodic decompensation (such as psychosis, depression, or suicidality)). ECF No. 124-1 at 5–6, n.3. At the hearing, Plaintiffs explained, however, that classification as either MH-2a or MH-2b by ACH is not dispositive of whether an inmate fits within the class definition and that other records could support inclusion within the class definition.

"regardless of which class definition is used, there are significant deficiencies which militate against the certification of a class in this litigation." ECF No. 139 at 8. Defendant argues that the class definition is not sufficiently definite so that it would be administratively feasible[16] for the Court to determine whether a particular individual qualifies as a class member.[17] *Id*. Defendant claims several deficiencies exist with the Proposed Class definition. *Id*. Defendant contends that individualized fact-finding will be needed to determine if each purported class member suffers a serious mental illness. *Id*. Defendant argues "serious mental illness" is a subjective notion and a diagnosis will differ even among reasonable and competent mental health practitioners. *Id*. Defendant asserts that Plaintiffs have not proposed a workable definition of "serious mental illness." *Id*. As such, this claimed subjectivity and ambiguity in the definition will require mini-trials to evaluate individualized fact-finding. *Id*.

---

[16] "'Administrative feasibility' means 'that identifying class members is a manageable process that does not require much, if any, individual inquiry.'" *Piotrowski v. Wells Fargo Bank, NA*, C/A No. DKC-11-cv-3758, 2015 WL 4602591, at *4 (D. Md. July 29, 2015) (citations omitted).

[17] Some courts have held that "the administrative feasibility requirement is inappropriate in the context of Rule 23(b)(2) because the purposes for which the requirement was created are absent." *J.O.P. v. United States Dep't of Homeland Sec.*, 338 F.R.D. 33, 51 (D. Md. 2020); *see, e.g., Kurlander v. Kroenke Arena Co., LLC*, 276 F. Supp. 3d 1077, 1084 (D. Colo. 2017) ("[T]he question of administrative feasibility is not pertinent to a class certified pursuant to Rule 23(b)(2)"); *Anders v. Ca. State Univ., Fresno*, C/A No. 1:21-cv-00179-KJM-BAM, 2025 WL 755664, at *10 (E.D. Cal. Mar. 10, 2025) ("There is no 'freestanding administrative feasibility prerequisite to class certification,' particularly when plaintiffs seek certification under Rule 23(b)(2)."); *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, C/A No. 19-cv-2875-RBK-SAK, 2023 WL 1818922, at *32 (D.N.J. Feb. 8, 2023) ("[A]dministrative feasibility is not a requirement of Rule 23(b)(2) classes"); *Harris v. Ga. Dep't of Corr.*, C/A No. 5:18-cv-00365-TES, 2021 WL 6197108, at *9 (M.D. Ga. Dec. 29, 2021) ("[T]here is no just cause for the Court to consider administrative feasibility since this action involves a proposed Rule 23(b)(2) class"). That principle aligns with the Fourth Circuit's reasoning in *Kadel* as to the ascertainability requirement in a Rule 23(b)(2) class. *Kadel*, 100 F.4th at 160–61.

Defendant asserts that a "documented disagreement" exists among the parties' medical experts as to whether many of the Named Plaintiffs even suffer from a "serious mental illness." *Id*. at 9.  Defendant argues, "to determine whether particular detainees—past, present, or future— qualify as class members, that will require individualized fact-finding and, in essence, mini-trials." *Id*.  Defendant contends that each Named Plaintiff in the present case and each putative class member "presents significant 'factual differences' from one another, not just in their mental illness diagnosis and prognosis but also in the level or types of mental health care they require or the conditions of confinement to which they are subjected."  *Id*. at 16.  Defendant argues that the differences in mental health diagnoses, different housing units under differing conditions, and the ongoing renovations and remedial activities Defendant has undertaken constitute different and constantly evolving circumstances such that there is a lack of cohesiveness among the claims and required relief for Plaintiffs.  *Id*.

In response, Plaintiffs contend that "SMI is not a diagnosis.  SMI is a term used to describe a mental or emotional disorder which significantly interferes with a person's ability to function." ECF No. 143 at 5.  According to Plaintiffs, determining whether a detainee is a member of the Proposed Class is not dependent on "whether they have been 'diagnosed' with SMI, it is whether they have a record of one of the diagnoses or impairments" listed in the class definition, whether they have been hospitalized for mental health reasons, or whether ASGDC has determined them to need special housing based on their mental illness.  *Id*. at 5–6.  Plaintiffs argue that class certification under Rule 23(b)(2) is "particularly suited to civil rights cases alleging a common course of conduct" and that Plaintiffs have detailed the systemwide policies and practices they are challenging based on specific constitutional violations.  *Id*. at 7.

*Discussion*

Plaintiffs have sufficiently identified a class, and the members of that class can be determined using objective criteria.  Plaintiffs need not identify every member of the class.  *See Shelton*, 774 F.3d at 561 (explaining that, because the focus is on the remedy sought, "and because a remedy obtained by one member will naturally affect the others, the identities of individual class members are less critical" in a Rule 23(b)(2) action).  Plaintiffs' Proposed Class is comprised of any detainee at ASGDC since April 28, 2022, that qualifies as an SMI Detainee, which is defined using objective criteria—i.e., whether a detainee (1) has a documented history of an enumerated diagnosis, (2) has been hospitalized for mental health reasons, or (3) has been deemed to need special housing based on a mental illness.  All members of the Proposed Class seek the same remedy—declaratory and injunctive relief related to the constitutional violations suffered by SMI Detainees as a result of Defendant's policies and practices at ASGDC.  Defendant's alleged wrongdoing is a pattern or practice that is generally applicable to all members of the Proposed Class.  The Proposed Class is proper under Rule 23(b)(2) because its membership is indivisible by nature and the alleged conduct can be declared unlawful as to all class members or none of them.  *Shelton*, 774 F.3d at 561; *Jonathan R. v. Just.*, 344 F.R.D. 294, 317 (S.D.W. Va. 2023) ("Plaintiffs seek court intervention 'to address the many long-standing systemic deficiencies' that affect West Virginia's entire foster care system" such that "the court could only declare unlawful and enjoin the challenged conduct 'as to all of the class members or as to none of them" and "[i]f the court determines that Defendants' practices are unconstitutional or violate federal law, 'a single injunction or declaratory judgment would provide relief to each member of the class.'") (quoting *Dukes*, 564 U.S. at 360).  Plaintiffs assert that they and the class members suffer from the same conduct from Defendant in the same way—Defendant has been deliberately indifferent to SMI

Detainees' serious mental health needs through its policies and practices and its unconstitutional conditions of confinement. Thus, the common questions Plaintiffs present are capable of class-wide resolution, and Defendant's contention that mini-trials will be necessary is without merit. *See Connor v. Md. Dep't of Health*, C/A No. MJM-24-cv-1423, 2025 WL 1167846, at *11 (D. Md. Apr. 22, 2025).

Defendant argues the Proposed Class in this case is similar to *AW v. Magill*, C/A No. 2:17-cv-1346-RMG, 2018 WL 6680941, at *1 (D.S.C. Aug. 21, 2018), where the court found that a "proposed class of mental patients within the care of the South Carolina Department of Mental Health (DMH) is not readily identifiable." ECF No. 139 at 10. Defendant contends "[t]he same difficulties with the ascertainability prong that this Court addressed in *AW* is also central to this case." *Id*. Defendant asserts that, like in *AW*, the medical records of the detainees at ASGDC cannot be used to ascertain the class members as they do not provide an "objective tool." *Id*. Setting aside the issue of ascertainability and the fact that *AW* was decided before (and without the benefit of) the Fourth Circuit's decision in *Kadel*, the undersigned finds that *AW* is distinguishable because the court in *AW* found that the plaintiffs had not offered an objective tool to identify each class member. 2018 WL 6680941, at *2. In the present case, Plaintiffs have "defined the class to include detainees based, not on prospective occurrences, interests, or abilities, but on well-documented, clearly identifiable records within Defendant's possession." ECF No. 142 at 6. Moreover, the Proposed Class members allege they have suffered harm because of the same policies and practices of Defendant applied across ASGDC to all SMI Detainees, and they seek the same injunctive relief available on a class wide basis. *See, e.g., Scott v. Fam. Dollar Stores, Inc.*, C/A No. 3:08-cv-00540-MOC-DSC, 2016 WL 9665158, at *7 (W.D.N.C. June 24, 2016) (approving class certification and noting "the statistical evidence of disparate impact and a pattern-

or-practice of discrimination provides the glue which makes the class cohesive and which makes the common, aggregation-enabling issues in the case . . . more prevalent or important than the non-common, aggregation-defeating individual issues" (internal quotation marks and citation omitted)).  Plaintiffs' Proposed Class definition is adequate to determine a class based on objective criteria and is sufficiently definite to satisfy the requirements of Rules 23(c)(1)(B), 23(b)(2), and 23(a).

**Rule 23(a) Requirements**

The Court now turns to whether Plaintiff has satisfied the requirements of Rule 23(a).

*Numerosity*

The numerosity requirement of Rule 23 requires that the Proposed Class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Deciding numerosity is discretionary, and there is no "mechanical test" or minimum class member requirement.  *Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984).  Courts generally find numerosity exists when a class has 40 or more members.  William B. Rubenstein, *Newberg on Class Actions* § 3:12 (5th ed. 2020); *see In re Under Armour Sec. Litig.*, 631 F. Supp. 3d 285, 300 (D. Md. 2022) (noting courts generally find classes of at least 40 members sufficiently large to satisfy the impracticability requirement, and classes of as few as 25 to 30 have been found to raise the presumption that joinder would be impracticable); *Nelson v. Warner*, 336 F.R.D. 118, 122 (S.D.W. Va. 2020) ("courts generally find numerosity exists when a class has 40 or more members").

Plaintiffs argue they satisfy the "numerosity" requirement "with a class consisting of hundreds of members at any given time."  ECF No. 124-1 at 6.  Plaintiffs contend that ASGDC's site manager for mental health services, Laurinda Saxon-Ward, testified that 608 of the 960 detainees in custody at ASGDC during November 2023 received mental health services.  *Id*.

Plaintiffs contend that the requested injunctive relief will protect the interests of current as well as future detainees as members of the Proposed Class. *Id.* Relying on *Scott v. Clarke*, 61 F. Supp. 3d 569, 584 (W.D. Va. 2014), Plaintiffs argue that joinder is impracticable due to the transitory nature of pretrial detention and due to the Proposed Class members' limited resources and lack of access to the courts. *Id.* at 7.

Defendant has not specifically challenged the numerosity requirement, although the Court has considered Defendant's arguments, including arguments regarding cohesiveness and ascertainability, in evaluating this factor. *See, e.g.*, ECF No. 139 at 11, n. 4 (arguing that "without a class definition that allows for ascertainable class members, it is impossible for the Court to properly evaluate and make a determination . . . on the element of numerosity").

Based on the record before the Court, Plaintiffs have satisfied the numerosity requirement of Rule 23(a)(1). The record evidence shows that, at any given time, ASGDC houses hundreds of inmates, many of whom receive mental health services and would qualify as members of the Proposed Class. "Because of the overwhelmingly large and continuously changing size of the class, the Court finds that joinder is impracticable." *Baxley v. Jividen*, 338 F.R.D. 80, 86 (S.D.W. Va. 2020) (noting "[t]his finding is consistent with other courts who have granted certification of jail classes"); *Scott*, 61 F. Supp. 3d at 584 (finding a class of approximately 1,200 prisoners satisfied numerosity requirement); *Thorpe v. Va. Dep't of Corr.*, C/A No. 2:20-cv-00007, 2023 WL 2908575, at *6 (W.D. Va. Apr. 12, 2023) (finding a number of inmates with mental health issues under similar facts to the present case was sufficient to satisfy the numerosity requirement); *Brooks v. Ward*, 97 F.R.D. 529, 533 (W.D.N.C. 1983) (finding the proposed class, comprised of more than 1,000 male prisoners, satisfied Rule 23(a)(1) because joinder of all the class members would be

impractical).  Plaintiffs have demonstrated that likely hundreds of detainees at ASGDC under the relevant period would qualify as SMI Detainees, thus satisfying the numerosity requirement.

### Commonality

Commonality under Rule 23 requires that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Although "[a] single common question will suffice, . . . it must be of such a nature that its determination 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'"  *EQT*, 764 F.3d at 360 (citation omitted).

Plaintiffs contend that numerous questions of law and fact are common to the class.  ECF No. 124-1 at 7.  Plaintiffs note that this case is brought to redress civil rights violations Defendant is perpetrating at ASGDC and that the relief sought by the putative representatives on behalf of themselves and others similarly situated will apply to all class members.  *Id*. at 8.  Plaintiffs contend that the facts surrounding the operation and management of ASGDC are common to all class members and that all class members suffer the same harm by their exposure to unconstitutional practices and conditions at ASGDC.  *Id*.  Plaintiffs contend that the declaratory and injunctive relief sought in the Second Amended Complaint satisfies the requirements under Rule 23 for commonality.  *Id*. at 9.

Defendant has not specifically challenged the commonality requirement, although the Court has considered Defendant's arguments, including arguments regarding cohesiveness and ascertainability, in the evaluation of this factor.  *See, e.g.*, ECF No. 139 at 16 (arguing "this is not a 'cookie cutter' scenario where everyone is the same or in the same situations").

Based on the record before the Court, Plaintiffs have satisfied the commonality requirement of Rule 23(a)(2).  Defendant's alleged treatment of mentally ill detainees, its chronic staffing issues, and the deplorable conditions of ASGDC facilities, along with other issues raised by

Plaintiffs, present common questions of fact and law. "[T]hese questions are consistent with common questions presented by other certified jail classes." *Baxley*, 338 F.R.D. at 87; *see Fain v. Crouch*, 342 F.R.D. 109, 115 (S.D.W. Va. 2022), *aff'd sub nom. Kadel v. Folwell*, 100 F.4th 122 (4th Cir. 2024); *see, e.g., Coreas v. Bounds*, C/A No. TDC-20-cv-0780, 2020 WL 5593338, at *12 (D. Md. Sept. 18, 2020) (finding commonality was met where claims were asserted by detainees at the same facility and presented "the common question of whether the [the detention center's] policies and procedures relating to issues such as testing, screening, social distancing, sanitation, and treatment of high-risk detainees reveal deliberate indifference to detainee health and safety, and impose impermissible punishment, that renders the conditions of confinement unconstitutional").

The facts regarding Defendant's operation and management of ASGDC and Defendant's treatment and housing of SMI Detainees are common to all Named Plaintiffs and members of the Proposed Class. The relief sought in this action, including injunctive and declaratory relief regarding systemic policies and practices at ASGDC, aims to remedy the same harms suffered by all members of the Proposed Class. "What matters to class certification is the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Scott*, 61 F. Supp. 3d at 585 (cleaned up) (citation omitted). Plaintiffs have made such a showing. *See Brown v. Lexington Cnty., S.C.*, C/A No. 3:17-cv-1426-MBS, 2021 WL 856878, at *8 (D.S.C. Mar. 5, 2021) (finding the plaintiffs had satisfied the commonality requirement where "the Class Claims seek only injunctive and declaratory relief, which courts generally recognize as the type of redress that by its very nature presents common questions of law and fact"); *Braggs v. Dunn*, 317 F.R.D. 634, 657 (M.D. Ala. 2016) (collecting cases from numerous district courts finding the commonality requirement was met under circumstances similar to the present case and noting that

"[t]he fact that not every mentally ill prisoner is subjected to precisely the same level of risk also does not defeat commonality").

### *Typicality*

Rule 23 requires that "the claims . . . of the representative parties are typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). To meet the typicality requirement, the Proposed Class representatives must show that "the claims or defenses of the class and class representatives arise from the same event or pattern or practice and are based on the same legal theory." *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 238 (S.D.W. Va. 2005) (quotations omitted).

Plaintiffs contend they satisfy the "typicality" requirement "for the same reasons that they meet the commonality requirement"—because the declaratory and injunctive relief sought would benefit all class members alike and there is no meaningful difference between the claims of the putative representatives and the absent class members. ECF No. 124-1 at 10. According to Plaintiffs, if they succeed in showing that Defendant's policies and procedures amount to deliberate indifference to a substantial risk of serious harm in violation of their constitutional rights, the resulting declaratory and injunctive relief would benefit putative representatives and absent class members alike. *Id.* at 10–11.

Defendant has not separately challenged the typicality requirement, although the Court has considered Defendant's arguments, including arguments regarding cohesiveness and ascertainability, in the evaluation of this factor. *See, e.g.*, ECF No. 139 at 16 (arguing that each Named Plaintiff and each putative class member "presents significant 'factual differences' from one another, not just in their mental illness diagnoses and prognoses but also in the level or types of mental health care they require or the conditions of confinement to which they are subjected").

Plaintiffs have satisfied the typicality requirement of Rule 23(a)(3). The claims of the Named Plaintiffs and Proposed Class all arise from the same operative facts. *See Bumgarner v. NCDOC*, 276 F.R.D. 452, 457 (E.D.N.C. 2011) (finding the typicality requirement was met in a case asserting similar claims by inmates at a corrections facility). The Named Plaintiffs are typical of the overall class because they assert the same claims and injuries—constitutional violations arising from the conditions of confinement and deliberate indifference to SMI Detainees' mental health needs as a result of Defendant's policies and procedures—and they seek the same relief that would apply to all class members. *Coreas*, 2020 WL 5593338, at *13 (finding class representatives' claims were typical of the proposed class members where the class representatives sought injunctive relief that would apply to all class members to remedy unconstitutional conditions of confinement).

### *Adequacy of Representation*

The class representatives must "fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). The counsel representing the class must also be capable of "fairly and adequately" representing the interest of the class. Fed. R. Civ. P. 23(g). This analysis takes into consideration "(1) whether there is conflict between the representatives and class members, and (2) whether the representatives will vigorously prosecute the matter on behalf of the class." *Baxley*, 338 F.R.D. at *89 (internal quotations omitted). This requirement has been described as "a two-pronged inquiry, requiring evaluation of: (1) whether class counsel are qualified, experienced, and generally able to conduct the proposed litigation; and (2) whether Plaintiffs' claims are sufficiently interrelated with and not antagonistic to the class claims as to ensure fair and adequate representation." *Lott v. Westinghouse Savannah River Co.*, 200 F.R.D. 539, 561 (D.S.C. 2000); *see also IBEW Loc. 98 Pension Fund v. Deloitte & Touche LLP*., 348 F.R.D. 35, 50

41

(D.S.C. 2024)(The Rule 23(a)(4) inquiry "has two components: (1) the interests of the proposed class representatives and class members must align; and (2) the plaintiffs' attorneys must be qualified, experienced, and able to conduct the litigation.").

### *(1) Adequacy of Class Counsel*

"The adequacy prerequisite requires the Court to be satisfied that 'the representative parties will fairly and adequately protect the interests of the class,' Fed. R. Civ. P. 23(a)(4), and that 'class counsel [will] fairly and adequately represent the interests of the class,' Fed. R. Civ. P. 23(g)(4)." *Souter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 212 (E.D. Va. 2015). "Rule 23(g) requires courts to consider four enumerated factors in appointing class counsel: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class." *Bell v. Brockett*, 922 F.3d 502, 511 (4th Cir. 2019) (citing Fed. R. Civ. P. 23(g)(1)(A)). Rule 23(g) also permits courts to consider any "other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Plaintiffs contend class counsel will adequately represent and protect the interests of the absent class members. ECF No. 124-1 at 11. Plaintiffs assert that class counsel, including attorneys Nekki Shutt ("Shutt"), Stuart Andrews ("Andrews"), Ashely Pennington, and Sarah Cox with the law firm Shutt & McDaniel, PA, are experienced, qualified, and competent to litigate this action and fairly represent the interests of Plaintiffs and the class as a whole. *Id*. Plaintiffs note the extensive work that these attorneys have done on this case and their experience working on other similar cases. *Id*. at 12. Plaintiffs provided the declarations of Shutt and Andrews in support of the Motion. ECF Nos. 124-3; 124-4.

Defendant asserts that there is no evidence that the attorneys of record, other than Shutt and Andrews, have any experience in prosecuting class action litigation. ECF No. 139 at 17. Defendant also asserts that "Shutt's experience should be deemed immaterial at this juncture" because "she has not participated in any court hearings, depositions, discovery conferences, or mediations for the Plaintiffs." *Id*. Defendant further argues that Plaintiffs' counsels' failure to timely file their class certification motion demonstrates their inability to fairly and adequately protect the interest of the class as required by Rule 23(a)(4). *Id*. at 17–18. Defendants contend that other deficiencies and inadequacies in the Motion—which Defendant describes as "basically a conclusory motion" lacking "the necessary evidence for the Court to engage in the requisite 'rigorous analysis' of the elements for a class to be properly certified—militates against a finding that class counsel is able to adequately represent the class in this case." *Id*. at 18.

The Proposed Class Counsel's declarations set out their prior experience in class action and civil rights cases, as well as the work done on the present case. ECF Nos. 124-3; 124-4. Neither party has identified any conflicts of interest. The Proposed Class Counsel have ably handled the matter for several years and conducted an extensive investigation into the issues regarding the claims. They are experienced attorneys and are fully capable of litigating this case on behalf of the class. Defendant's arguments to the contrary are unpersuasive. Based on the record in this case, including the declarations of the Proposed Class Counsel, and the Court's familiarity with counsel's work in this case and in other cases, the Court finds that the Proposed Class Counsel will fairly, adequately, and ably represent the interests of the class to satisfy the requirements of Rule 23(a) and are eligible for appointment under the requirements of Rule 23(g). Therefore, having considered the work that Named Plaintiffs' counsel has done in identifying and investigating potential claims in this action, counsel's experience in handling complex litigation, counsel's

knowledge of the applicable law, and the resources counsel will commit to representing the class, the Named Plaintiffs' counsel should be designated as Class Counsel.

### (2) Adequacy of Class Representatives

As to the adequacy of class representatives, Plaintiffs argue that the putative representatives will fairly and adequately represent and advance the interests of the class. ECF No. 124-1 at 11. Plaintiffs note the putative representatives are eleven detainees who suffer from serious mental illness and who are presently confined at ASGDC. *Id*. at 3.

Defendant argues that Plaintiffs have failed to show that the proposed class representatives can fairly and adequately protect the interests of the class. ECF No. 139 at 11, 17. Defendant contends that its expert, Dr. Thomas Fowlkes, opined that only three of the fifteen originally named Plaintiffs can be considered SMI Detainees—CR11, CR13, and CR14. *Id*. Defendant contends that none of these three qualify as proper class representatives. *Id*. As Defendant notes, CR13 (along with CR1, CR7, and CR8) was dismissed as a putative class representative. *Id*. at 12. Defendant explains that CR11 and CR14 (along with CR4 and CR10) have been released and are no longer detained at ASGDC. *Id*. As such, Defendant contends that Plaintiffs are not appropriate persons to serve as class representatives as their claims are no longer justiciable. *Id*. Defendant contends the remaining identified class representatives "do not qualify as class members because they are not SMI and, thus, cannot be class representatives." *Id*.

Defendant further argues that Plaintiffs "have not addressed any of [the required] factors at all, including whether the proposed class representatives have the capacity, intellect, knowledge, and credibility to serve in that role, particularly given that they would be called upon to make decisions for the class as a whole." *Id*. at 13. Defendant contends Plaintiffs have not provided the Court with any substantive information about the Proposed Class representatives, and the Motion

does not identify them or describe their backgrounds or intellectual or cognitive abilities to make a decision for the class. *Id.*

Plaintiffs respond that a review of Defendant's own records illustrates that each of the Named Plaintiffs meets the Proposed Class definition for SMI. ECF No. 143 at 7. Plaintiffs provide the following explanation:

- CR2 was categorized as MH-2A, with documented diagnoses of bipolar disorder, schizophrenia, PTSD, and anxiety.

- CR3 was diagnosed with generalized anxiety disorder and other depressive episodes, as having "grief with depression" and bipolar disorder, and as having an incident of "wanting to jump" following the death of his mother.

- CR4 was diagnosed as having major depressive disorder and categorized as MH-2A, was placed on suicide watch, and labeled mentally ill and dangerous to self.

- CR5 was diagnosed with depression and hallucinations, major depressive disorder with anxious distress, PTSD, anxiety disorder, and a mood disorder.

- CR6 was categorized as MH-2A and diagnosed with PTSD.

- CR9 has a recorded history of auditory and visual hallucinations, schizoaffective disorder, and personality disorder unspecified, with cocaine use disorder.

- CR10 was identified as having "special mental health needs," as Code 2 emotional stability, with moderate impairment requiring monitoring, individual or group therapy, and being placed in special housing based on his mental health.

- CR12 reported he had been diagnosed with major depressive disorder and PTSD, was categorized as MH-2A with a history of auditory and visual hallucinations involving his deceased two-year-old son.

- CR15 was categorized as MH-2A.

*Id*. at 8–9 (citing various records in support). Plaintiffs contend the "records in Defendant's possession provide easily identifiable markers of SMI." *Id*. at 9. Plaintiffs reiterate that "SMI is not a single diagnosis" and, instead, "is a term used to describe a mental or emotional disorder which significantly interferes with a person's ability to function[] and can be identified in this case by reference to historical records in the Defendant's custody and control." *Id*.

Plaintiffs also argue that the release of certain putative class representatives from ASGDC does not moot the class claims. *Id*. at 10. Plaintiffs contend that the claims asserted in this case relate back to the filing of the Complaint due to the inherently transitory nature of pretrial detention. *Id*. Plaintiffs assert that because the constitutional violations at issue in this case are longstanding and ongoing, there is a "constant class of persons who will be subject to the deprivations at issue." *Id*. at 11.

Finally, Plaintiffs assert that Defendant's challenge to the putative class representatives' competency are unsupported. *Id*. Plaintiffs contend that adequate representation may be presumed in the absence of any evidence the named Plaintiffs have a conflict of interest with other class members or that counsel are unqualified. *Id*. According to Plaintiffs, Defendant has provided no actual evidence or argument to support a challenged to the competency of the putative class representatives. *Id*. at 12.

### *Analysis*

As to the adequacy of the Named Plaintiffs, the record contains allegations and supporting evidence that the Named Plaintiffs fit the definition of SMI Detainees; there is no evidence of a conflict of interest; and the Named Plaintiffs are represented by qualified counsel. *See supra* at 5–7 (summarizing alleged constitutional violations as to the Named Plaintiffs). The Named Plaintiffs are adequate class representatives and can fairly represent the interests of the class.

As to Defendant's argument that the release of certain Named Plaintiffs renders their claims moot, such an argument does not defeat class certification. *Moss v. Lane Co.*, 471 F.2d 853, 855 (4th Cir. 1973) ("If the plaintiff were a member of the class at the commencement of the action and his competency as a representative of the class then determined or assumed, the subsequent dismissal or mootness of his individual claim, particularly in a discrimination case, will not operate as a dismissal or render moot the action of the class, or destroy the plaintiff's right to litigate the issues on behalf of the class."). Courts have noted "a class action may remain live despite the mootness of the claims of the class representatives." *Timothy B. v. Kinsley*, C/A No. 1:22-cv-1046, 2024 WL 1350071, at *7 (M.D.N.C. Mar. 29, 2024); *Jonathan R. by Dixon v. Justice*, 41 F.4th 316, 325 (4th Cir. 2022) ("Where a named plaintiff's individual claim becomes moot before the district court has an opportunity to certify the class, the certification may 'relate back' to the filing of the complaint if *other* class members 'will continue to be subject to the challenged conduct and the claims raised are . . . inherently transitory.'"). The United States Supreme Court has explained that claims challenging pretrial detention conditions are not moot even when the named plaintiffs are no longer pretrial detainees because "[p]retail detention is by nature temporary." *Gerstein v. Pugh*, 420 U.S. 103, 111 n.11 (1975).[18] This Court has found that a case brought by an inmate of a county

---

[18] The Supreme Court's explanation is worth repeating in full:

> This case belongs, however, to that narrow class of cases in which the termination of a class representative's claim does not moot the claims of the unnamed members of the class. Pretrial detention is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted. The individual could nonetheless suffer repeated deprivations, and it is certain that other persons similarly situated will be detained under the allegedly unconstitutional procedures. The claim, in short, is one that is distinctly 'capable of repetition, yet evading review.' . . . The length of pretrial custody cannot be ascertained at the outset, and it may be

47

jail does not become moot when the inmate is released from custody due to the "inherently transitory" exception to the mootness doctrine. *Brown v. Lexington Cnty.*, C/A No. 3:17-cv-1426-MBS, 2018 WL 3359019, at *5 (D.S.C. July 10, 2018). In any case, at least some of the Named Plaintiffs remain incarcerated at ASGDC and would be able to serve as class representatives. That some of the Named Plaintiffs have been released from ASGDC does not mean that other Named Plaintiffs cannot serve as class representatives. As in *Gerstein*, "the constant existence of a class of persons suffering the deprivation is certain" on the facts alleged. *See Jonathan R. by Dixon v. Just.*, 41 F.4th 316, 326 (4th Cir. 2022) ("Plaintiffs' claims fit comfortably within *Gerstein*'s inherently transitory exception"). Importantly, if any one of the Named Plaintiffs succeed on the merits of their respective claims, the same injunction would afford identical relief to all members of the respective class. *See Baxley*, 508 F. Supp. 3d at 44.

As to the competency of the Named Plaintiffs, Defendant's cursory assertion that Plaintiffs have failed to demonstrate the intellectual and cognitive abilities of the Proposed Class representatives is insufficient to defeat class certification. Defendant has not identified any specific intellectual or cognitive deficiencies as to any of the Named Plaintiffs such that their competency could reasonably be questioned. "The adequacy of . . . the individual plaintiffs[] is presumed in the absence of specific proof to the contrary." *S.C. Nat'l Bank v. Stone*, 139 F.R.D. 325, 330–31 (D.S.C. 1991) (citation omitted). The Named Plaintiffs' claims are consistent with

---

> ended at any time by release on recognizance, dismissal of the charges, or a guilty plea, as well as by acquittal or conviction after trial. It is by no means certain that any given individual, named as plaintiff, would be in pretrial custody long enough for a district judge to certify the class. Moreover, in this case the constant existence of a class of persons suffering the deprivation is certain.

*Gerstein*, 420 U.S. at 111 (citation omitted).

those of the class, they have demonstrated a commitment to prosecute this litigation on behalf of the class thus far, and they have hired competent, experienced, and qualified counsel to represent them and the class. *See Freeman v. Progressive Direct Ins. Co.*, 733 F. Supp. 3d 463, 490 (D.S.C. 2024) (finding the class representative would fairly and adequately protect the interests of the class). There is no difference in interest between the Named Plaintiffs and the Proposed Class, which is the alleged inadequate treatment for mental illness and conditions of confinement as a result of Defendant's policies and practices impacting all SMI Detainees. For these reasons and the reasons discussed above regarding commonality and typicality, the Court is satisfied that the Named Plaintiffs are competent to represent the Proposed Class and will fairly and adequately protect the interests of the class.

Having considered the requirements of Rule 23(a), the Court now evaluates whether Plaintiffs have satisfied the Rule 23(b) requirements.

**Rule 23(b) Requirements**

Rule 23(b)(2) provides that "[a] class action may be maintained if Rule 23(a) is satisfied and if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Thus, "[t]he rule has two requirements: 'that the defendant acted on grounds applicable to the class and that the plaintiff seeks predominantly injunctive or declaratory relief.'" *Thorpe*, 2023 WL 2908575, at *14 (citation omitted). "The key to the [Rule 23](b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted-the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Dukes*, 564 U.S. at 360. Class certification is appropriate "only when a single injunction or declaratory judgment would

provide relief to each member of the class." *Id*. The Fourth Circuit has explained that certification under Rule 23(b)(2) is appropriate where final injunctive relief is sought and will settle "the legality of the behavior with respect to the class as a whole." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 329 (4th Cir. 2006).

Plaintiffs contend that they meet the requirements of Rule 23(b)(2), arguing "[a] judgment from the Court declaring that Defendant is violating the constitutional rights of class members and the entry of an injunction requiring Defendant to remedy those violations will apply equally to all class members." ECF No. 124-1 at 13. Plaintiffs further argue that certification of the Proposed Class will serve the interest of justice in that (1) consolidating the recurring common issues raised in this case will conserve judicial resources; (2) certification will benefit class members by providing access to the Court and potential legal remedies that individual detainees would not otherwise have; and (3) class certification benefits Defendant as it provides a single proceeding in which to determine the merits of the Plaintiffs' claims, thereby protecting Defendant from inconsistent adjudications. *Id*. at 13–14. Defendant has not separately or specifically addressed these issues, but the Court has considered all of Defendant's arguments in assessing whether Plaintiffs can satisfy the requirements under Rule 23(b)(2).

Certification of the Proposed Class under Rule 23(b)(2) is appropriate in this case because Plaintiffs have shown that Defendant's actions are generally applicable to the Proposed Class as a whole and Plaintiffs seek declaratory and injunctive relief as to those actions. Plaintiffs have alleged that Defendant's policies and practices apply generally to the Proposed Class members and that all members are harmed in essentially the same way. Plaintiffs have alleged class-wide violations of SMI Detainees' civil rights—including deliberate indifference as to the lack of adequate treatment for SMI, the risk of harm due to staffing shortages, unconstitutional conditions

50

of confinement, and other violations—such that the Proposed Class fits within the scope of classes contemplated by Rule 23(b)(2).  *See Taylor v. Union Carbide Corp.*, 93 F.R.D. 1, 7 (S.D.W. Va. 1980) ("The history of Rule 23(b)(2) indicates that, albeit not exclusively, it was designed for use in civil rights cases.").  Further, the injunctive relief sought is indivisible and applicable to all members of the Proposed Class.  *See Berry v. Schulman*, 807 F.3d 600, 607 (4th Cir. 2015) (finding class certification was appropriate because the relief sought by the class was injunctive and "indivisible" in that it "will accrue to all members of the Rule 23(b)(2) class").  It is well-settled that "suits brought for injunctive relief alleging civil rights violations are precisely the type of suit for which Rule 23(b)(2) was intended to provide class certification."  *Harris v. Rainey*, 299 F.R.D. 486, 494 (W.D. Va. 2014) (collecting cases).  Therefore, certification of the Proposed Class under Rule 23(b)(2) is appropriate.

## CONCLUSION AND RECOMMENDATION

  Based on the foregoing, Plaintiffs' Motion for Class Certification (ECF No. 124) should be **GRANTED**.  The district court should certify the Proposed Class, approve the Named Plaintiffs as class representatives, and appoint Plaintiffs' attorneys as Class Counsel.

  **IT IS SO RECOMMENDED**.

s/William S. Brown<br>
United States Magistrate Judge

May 22, 2025
Greenville, South Carolina

*   The parties' attention is directed to the important notice on the following page.*

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street, Suite 2300
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).